Jeffery TALLEY et al *v.* MFA MUTUAL
INSURANCE COMPANY

81-16                           620 S.W. 2d 260

Supreme Court of Arkansas
Opinion delivered July 6, 1981
[Rehearing denied September 21, 1981.]

*Frierson, Walker, Snellgrove & Laser*, by: *Paul Mark Ledbetter*, for Don A. Davis, Imogene Davis and Phillip Anthony Davis; and *Seay, Bristow & Res*, by: *Bill W. Bristow*, for appellants.

*Cathey, Goodwin, Hamilton & Moore*, by: *Donis B. Hamilton*, for appellee.

FRANK HOLT, Justice. Appellee brought this declaratory judgment action to determine its liability to various appellants under a homeowners policy issued to appellants, Don and Imogene Davis. Both appellee and appellants, the Davises and their son Tony, sought summary judgment. The trial court granted summary judgment in appellee's favor based on the pleadings and affidavits, finding appellee had no liability under the terms of the policy.

Rick Evans, Jeffrey Talley and Tony Davis, appellants,

were among those attending a party at the home of a friend, Joe Burns. Evans and Talley were 18 at the time — Davis was 16. An altercation arose between Davis and the other two. Davis, who had apparently consumed considerable alcohol, left the party about 11 p.m., procured a shotgun and returned to the house. Some of the guests were outside and he told them to tell Evans and Talley to come outside if they still wanted some arguments. Shortly thereafter, those at the party heard shots and discovered the rear windows of the Evans and Talley cars, parked in the driveway, had been shot out. Davis circled the block and shot at the car windows a second time. Talley and Evans at some point took shotguns from the Burns' house and went outside in the area of their cars. Davis returned again and fired a third time in the direction of the cars. He then drove away and did not return. In this final round of fire, Talley and Evans were hit by the shotgun blasts. As a result Talley is totally blind and Evans is partially blind.

Upon being notified that a claim had been made against the Davises, the insureds, by Talley and Evans, appellee filed this action to determine appellee's liability under both the automobile policy and the homeowners policy, the latter being the subject of this appeal. The homeowners policy provided liability coverage for "bodily injury or property damage, to which this insurance applies, caused by an occurrence." "Occurrence" is defined in this section as "an accident." The insurer has a duty to defend "even if any allegations of the suit are groundless, false or fraudulent ..." The exclusionary language states that the policy does not cover "bodily injury ... which is either expected or intended from the standpoint of the insured."

It is well settled that a summary judgment is an extreme remedy and is only proper whenever the pleadings and proof show that no genuine issue exists as to a material fact, and the moving party is entitled to a judgment as a matter of law. Any proof submitted with the motion must be viewed in the light most favorable to the party resisting the motion with all doubts and inferences being resolved against the moving party. *Wirges* v. *Hawkins*, 238 Ark. 100, 378 S.W. 2d 646

(1964); and *Saunders, Adm'x* v. *Nat'l Old Line Ins. Co.*, 266 Ark. 247, 583 S.W. 2d 58 (1979).

The crucial question presented here is whether a liability policy such as this one provides coverage for the unintended results of an intentional act. If so, summary judgment was improper because there is a question of fact as to whether or not the injuries were intended or were merely the unintended result of an intentional act, shooting at the cars.

In a supporting affidavit, Tony Davis stated the injuries were not the intentional or expected result of any negligence on his part. The Davises, the insureds, in their pleadings and affidavit, stated the injuries were neither expected nor intended from the standpoint of the insured and that their son did not see Talley and Evans at the time of the shooting nor did he expect or intend to harm them. In Talley's pleading and supporting affidavit, he stated that, having full knowledge of the circumstances, including his location and position at the time of the injuries he suffered, it was his opinion that Davis neither intended nor expected to cause him personal injury. An individual, who lived next door to the Burns and witnessed the incident, stated by affidavit that he saw Talley and Evans come out of the house and hide behind the cars before the second round of shooting at which time a window and fender of another car were damaged. However, when the car made its third trip in front of the house it was his impression that the boys, who had been in the driveway, were in the house and he could not see them at that time. It was approximately midnight and the street lights did not provide much light. It was his opinion that the driver of the car did not see the youths but was shooting at the cars in the driveway and the pellets accidentally hit Talley and Evans.

The majority of jurisdictions would allow coverage for unintended results of an intentional act under this or similar language. The clear language of the policy exclusion itself, as quoted previously, states there is no coverage for injury that is expected or intended. In 10 Couch on Insurance 2d, § 41.6, the author states:

> It is only the intended injuries flowing from an intentional act that are excluded; ... and a homeowners policy covers bodily injury from unintended results of an intentional act but not for an injury which was intended.
>
> For purposes of determining whether recovery can be had under an 'accident' provision of a liability policy, the resulting damage can be unintentional and therefore accidental even though the original acts were intentional ... If the consequences consisting of damages from intentional acts are not intended and are unexpected they are 'accidental' within a policy. ...

See also Anno., 2 ALR 3rd 1238.

In *Lyons* v. *Hartford Insurance Group*, 125 N. J. Super. 239, 310 A. 2d 485 (1973), the court had before it a policy containing the same language as here. The court there said:

> The general rule is that coverage exists under insuring and exclusion clauses identical or similar to the ones involved here for the unintended results of an intentional act, but not for damages assessed because of an injury which was intended to be inflicted.

The court there distinguished those cases in which an intentional act resulted in an *intended* injury, although different in kind or more severe than intended.

In *State Farm Mutual Auto Ins. Co.* v. *Worthington*, 405 F. 2d 683 (1968), the insured contended he was shooting warning shots in the dark when he shot and killed the plaintiff's son. The court there rejected the argument that because the act, the shooting, was intentional so were the resulting injuries, stating this was too broad an interpretation of the exclusionary clause. The court quoted a Missouri case holding that, although the discharge was intentional, whether the killing was intentional or not presented a fact issue. Some courts, on this issue, have also cited the rule of construction that, because the exclusionary provision is ambiguous, not clearly expressing an intention

to exclude unintentional results of deliberate acts, any ambiguity must be resolved against the insurance company who drew up the contract. *Smith* v. *Moran*, 61 Ill. App. 2d 157, 209 N.E. 2d 18 (1965).

Appellees cite *National Investors Life and Casualty Insurance Company* v. *Arrowood*, 270 Ark. 617, 606 S.W. 2d 97 (CA 1980), in which the court of appeals discussed this issue. There the court expressly stated, however, it did not have before it the issue of "reconciling an intentional act with an unintended result." Furthermore, the appeal was not, as here, based on a summary judgment.

Neither are we persuaded by the argument that an unintended result of an intended act cannot be an "occurrence" or "accident" within the coverage of the policy. See *Lyons* v. *Hartford Insurance Group, supra*. Furthermore, we see no violation of public policy in allowing recovery in circumstances in which it is shown the results were accidental or unintended. Nor do we adopt the tort concept that one intends the natural and foreseeable consequences of his acts so as to bar recovery for unintended results. See 7A Appleman, Insurance Law and Practice, § 4492.01, p. 29, stating this has no application in interpreting terms of insurance contracts.

The short of it is that if Tony Davis intended to shoot Talley and Evans, then there is no coverage. If he did not and it was mere negligence on his part, as he contends, then there is coverage. We hold a fact issue exists as to whether he intended to hit or injure Talley and Evans. Many acts are intentional in one sense or another; however, unintentional results often flow from intentional acts.

Furthermore, the court erred in awarding summary judgment against the parents of Tony, the insureds or policy holders. Their rights are severable under the policy. Under the terms of the policy, whether the act was "expected or intended" must also be looked at from the "standpoint of the insured," the parents, the Davises. As to them, the injuries were not alleged to be intentional. As indicated, the insurer has a duty to defend the Davises "even if any allegations of

the suit are groundless, false or fraudulent." We think that from the pleadings and proof, the Davises are entitled to coverage as a matter of law.

Reversed and remanded.

GEORGE ROSE SMITH, HICKMAN, and HAYS, JJ., dissent in part.

GEORGE ROSE SMITH, Justice, dissenting in part. I agree that the judgment should be reversed as to the appellee's coverage of Tony Davis's parents, but I cannot join in the reversal as to Tony himself.

The affidavits of Johnny White and Melody James stand uncontradicted as to admissible facts based on personal knowledge, as required by ARCP, Rule 56 (e). Those witnesses say that Tony had been drinking heavily, having consumed "quite a few" shots of unmixed whiskey. Tony started to leave and got into an argument with Evans and Talley, in the course of which Talley kicked Tony in the face twice before Tony was able to drive off.

Johnny and Melody then drove to the county line to get more beer, a round trip we may judicially notice to exceed 12 miles. While they were gone Tony went home and got a shotgun and shells for it. As Johnny and Melody were walking up the driveway upon their return, Tony drove up, found out who they were, and yelled: "Tell those sons of bitches Talley and Evans to come out if they still want some arguments," or words to that effect.

Johnny and Melody went in and delivered the message. Tony was heard to fire the shotgun. He returned and fired more shots while Evans and Talley were each getting a shotgun themselves. They went outside. Tony returned and must have shot directly at them, for he succeeded in hitting each one in the face. Such accuracy is not an accident. In response to the appellee's affidavits, Tony Davis filed only a weasel-worded affidavit saying that "the alleged injuries" of Evans and Talley "were not the intentional or expected result of any negligence on my part." Thus there is

absolutely no sworn denial by Davis of the charge that he intentionally shot Evans and Talley.

Under our summary judgment procedure, when a motion for summary judgment is supported by affidavits, the opposing party cannot rely on the mere allegations or denials of his pleadings. He must meet proof with proof, setting forth "specific facts" showing there is a genuine issue for trial. Act 160 of 1967, now incorporated in ARCP, Rule 56 (e); *Coffelt* v. *Ark. P. & L. Co.*, 248 Ark. 313, 451 S.W. 2d 881 (1970).

The affidavits here can only be understood to say that Davis challenged Evans and Talley to come out and continue the fight, they responded to the challenge, and Davis shot them both. If a jury should find, on this evidence, that the tragic injuries to Evans and Talley were the "unintended results of an intentional act," I do not see how anyone could say that the verdict was based on substantial evidence. That being true, the summary judgment as to the appellee's freedom from responsibility for Tony Davis's conduct should be affirmed.

HICKMAN and HAYS, JJ., join in this dissent.