Ruth BOHNSACK, Appellant,

v.

## EMPLOYERS INSURANCE OF WAUSAU, Appellee.

No. 82–1878.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1983.

Decided June 14, 1983.

---

**1362**

Sam Sexton, Jr., Sexton, Nolan & Robb, P.A., Fort Smith, Ark., for appellant.

G. Alan Wooten, Warner & Smith, Fort Smith, Ark., for appellee.

Before BRIGHT, BENNETT,* and FAGG, Circuit Judges.

BENNETT, Circuit Judge.

Ruth Bohnsack appeals from the district court's[1] judgment in favor of Employers Insurance of Wausau (Wausau or appellee) on appellant's claim for payment under

---

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

a general liability policy issued by Wausau to The Blue Chip Transfer Company (Blue Chip) that also covered Blue Chip's president, Don Duvall. On June 30, 1980, appellant obtained a judgment against Duvall in the Circuit Court of Pope County, Arkansas, for $90,000 on the basis of appellant's claim that Duvall had caused the wrongful death of appellant's husband, Lester Bohnsack. After the judgment against Duvall remained unpaid for more than 30 days, appellant filed suit against Wausau in the United States District Court for the Eastern District of Arkansas. The district court, in an unpublished opinion and order dated June 30, 1982, denied recovery on the basis of its conclusion that there was no "occurrence," as that term is defined in the insurance contract, that would give rise to liability under the contract. We affirm.

*Background.*

On March 11, 1977, Duvall and Lester Bohnsack were involved in an altercation which culminated in Duvall's striking Bohnsack on the side of the head with a two-by-four piece of lumber. Mr. Bohnsack later died as a result of the blow to his head. Duvall claimed that the blow was struck in self-defense, but on April 6, 1977, he was charged with murder in the second degree. On May 15, 1978, Duvall entered a plea of guilty to the charge in the Circuit Court of Yell County, Arkansas. Pursuant to a plea bargain, he received probation for five years and a fine of $5,000.

Duvall and Lester Bohnsack were both officers of Blue Chip at the time of the dispute, which arose from a discussion of business matters during business hours. Wausau was both the workmen's compensation and liability carrier for Blue Chip. Duvall, as president of Blue Chip, was an insured under the liability policy issued by Wausau. As Blue Chip's workmen's compensation carrier, Wausau paid appellant $30,978 in workmen's compensation benefits.

---

1. The Hon. George Howard, Jr., United States District Judge, Eastern District of Arkansas.

As mentioned, appellant obtained a judgment for $90,000 against Duvall as a result of her husband's death. Wausau intervened in the case in an attempt to recover the sums paid to appellant under the workmen's compensation policy. Wausau was granted a lien against the judgment for the amount that it had paid to appellant.

On October 3, 1980, appellant filed this present action against Wausau, alleging coverage under the liability policy in favor of Duvall thus inuring to her benefit by reason of her judgment against Duvall. The case was tried on December 10, 1981, pursuant to a waiver of jury trial by the parties based upon a stipulation of certain facts and oral testimony.[2]

The district court addressed only the first defense offered by Wausau denying liability under the general liability policy. This first defense was that there was no occurrence, as that term is defined in the policy, which gives rise to liability. "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The lower court stated that "there was no occurrence, and therefore, no coverage under the policy, since the injury and subsequent death of the insured were both expected and intended from the standpoint of Duvall."

The court noted that Duvall never contended that he struck Lester Bohnsack inadvertently or by accident. The court stated:

> Insofar as it is probative, Duvall's account of the incident indicates that he intended to strike Bohnsack at least with enough force to incapacitate him and stop the impending attack. Severe injury and even death are certainly the natural and probable consequences of such action.

The court also noted that Duvall pled guilty to murder in the second degree, a crime which requires an intent to cause death or serious injury. The district court concluded:

> Even if the Court were to find that the injury was not intentional, the policy provides that it must also be unexpected. The Court cannot say that serious injury leading to death is an unexpected result of an intentional blow [by] a two by four piece of lumber swung in the heat of an argument at another human being, especially by one who feels that his own safety is threatened.

Having found that there was no occurrence which would give rise to liability under the insurance contract, the district court did not find it necessary to address the other defenses raised by Wausau. The district court therefore entered judgment for Wausau.

*Discussion.*

We fully agree with the holding and reasoning of the district court. The two cases cited by the district court provide a solid basis for the court's conclusion that there was no occurrence, and thus no liability under the insurance contract. In *Great American Insurance Co. v. Ratliff*, 242 F.Supp. 983, 991 (E.D.Ark.1965), the court stated:

> the presence or absence of a particular intent can be inferred logically and legally from the facts and circumstances leading up to, surrounding, and following the act or omission in question. And normally a person is presumed to intend the natural and probable consequences of his acts. Thus, if a person in the possession of his faculties intentionally does an act from which injury to another will probably and foreseeably result, it may be inferred that in doing the act the actor intended injury.

In *National Investors Life & Casualty Insurance Co. v. Arrowood*, 270 Ark. 617, 606 S.W.2d 97 (1980), a case involving an insurance policy with provisions similar to the

2. In the district court, appellant attempted to withdraw her waiver of a jury trial after the case was submitted to the court. The court found the motion untimely and prejudicial to Wausau, and therefore denied the motion. Appellant does not challenge this decision on appeal.

policy involved in this case, the Arkansas Court of Appeals stated:

> The more recent cases and, we perceive, the better reasoned cases hold that if the performance of an intentional act causes injury which may be said to be the natural and probable consequence of such an act, then the injury itself was intentional, even though it was not the injury intended. [606 S.W.2d at 101.]

The overwhelming evidence of record supports the district court's finding that Duvall intentionally struck Lester Bohnsack in the head with a piece of lumber, and that severe injury or death was the natural and probable consequence of such an action.

Appellant contends that the district court erred in applying the above legal standard to the case at bar. Appellant quotes the following passage from *Talley v. MFA Mutual Insurance Co.,* 273 Ark. 269, 620 S.W.2d 260 (1981), where the Arkansas Supreme Court stated:

> The majority of jurisdictions would allow coverage for unintended results of an intentional act under this or similar language. The clear language of the policy exclusion itself, as quoted previously, states there is no coverage for injury that is expected or intended. In 10 Couch on Insurance 2d, § 41.6, the author states:
>
> > It is only the intended injuries flowing from an intentional act that are excluded; ... and a homeowners policy covers bodily injury from unintended results of an intentional act but not for an injury which was intended.
>
> For purposes of determining whether recovery can be had under an 'accident' provision of a liability policy, the resulting damage can be unintentional and therefore accidental even though

the original acts were intentional ... If the consequences consisting of damages from intentional acts are not intended and are unexpected they are 'accidental' within the policy .... [620 S.W.2d at 262.]

The above passage from *Talley* is unavailing to appellant's claim for recovery.[3] Appellant's discussion of liability under the policy omits the fact that the injury must be both unintended *and* unexpected. As quoted earlier, the district court specifically found that even if there was a question of whether the injury was intentional, it could not be said that serious injury leading to death was an unexpected result of an intentional blow to the head by a two-by-four piece of lumber. We fully concur in this conclusion, and thus hold that there was no occurrence that would give rise to liability under the insurance contract.

■ Appellant also makes the following arguments: (1) Duvall was acting in self-defense, and thus was covered under the liability policy; (2) the district court erred in holding that a negotiated plea to a criminal charge was evidence of intent in a civil proceeding;[4] and (3) the district court erred in its failure to consider the claim that Wausau had incurred liability by deliberately exposing Duvall to unwarranted risk. We find that these arguments are either without merit or unsupported by the evidence.

*Conclusion.*

We hold that there was no occurrence that would give rise to liability under the insurance contract. Accordingly, after thorough consideration of the record and the parties' submissions, we affirm the district court's entry of judgment in favor of Wausau, the appellee.

---

**3.** It should be noted that in *Talley* the issue before the court was whether a grant of summary judgment was proper, given the facts of the case. The court held that a grant of summary judgment was improper, as there was a factual question of whether the son of the insureds was aiming at a car or the victims when he fired a shotgun blast. The court stated that if the son intended to shoot the victims, then there is no coverage. In the case at bar, there

is no question that Duvall intended to strike Bohnsack with the piece of lumber.

**4.** We agree with appellee that Rule 25.4, Arkansas Rules of Criminal Procedure, would not preclude introduction of the guilty plea into evidence. In any event, the district court found ample evidence to support its conclusions without reliance on Duvall's conviction of murder in the second degree.