CNA INSURANCE COMPANY *v.* James Ralph McGINNIS, and Vicky Lynn HILLS

84-17                                    666 S.W.2d 689

Supreme Court of Arkansas
Opinion delivered March 26, 1984
[Rehearing denied April 30, 1984.*]

*HOLLINGSWORTH, J., would grant rehearing.

*Davis, Cox & Wright,* for appellant.

*Sexton, Nolan, & Robb, P.A.,* and *Jones, Gilbreath, & Jones,* by: *Kendall B. Jones,* for appellee.

GEORGE ROSE SMITH, Justice. In this case we granted a petition to review the decision of the Court of Appeals because that court had affirmed the chancellor's decree by a 3-3 tie vote. Rule 29 (4). We find that the chancellor's decree was clearly erroneous and accordingly reverse the decision of the Court of Appeals.

Vicky Lynn Hills brought suit in federal court against her former stepfather, James Ralph McGinnis, for injuries received as a result of sexual assaults and abuse inflicted by McGinnis upon Vicky Lynn. McGinnis had a homeowner's insurance policy with the petitioner, CNA Insurance Company, which obligated CNA to defend personal injury suits against McGinnis and to pay any judgment against him, up to the $50,000 policy limit, with an exception excluding coverage for personal injury which is "expected or intended" by the insured. Relying upon that exception, CNA refused to defend the federal action and brought this suit in a state court for a decree declaring that CNA is not obligated under its policy to defend the action or to pay any judgment that may result. On cross motions for summary judgment the chancellor held that CNA is obligated under

its policy, because although McGinnis's acts were intentional, he did not expect or intend any injury to the child. In reaching that conclusion both the chancellor and the affirming appellate judges relied upon our decision in *Talley* v. *MFA Mutual Ins. Co.,* 273 Ark. 269, 620 S.W.2d 260 (1981), holding that under a similar exception the insurer was liable where an insured intentionally fired a shotgun in the direction of others but did not expect or intend to injure them.

Here CNA proved that McGinnis had had sexual relations with Vicky Lynn almost daily from the time she was six years old until she was sixteen. The relations stopped when McGinnis was arrested, convicted, and sent to the penitentiary. McGinnis had also had similar relations with Vicky Lynn's older twin sisters until they ran away from home and the family began to receive counseling as a group.

McGinnis admitted that he intended to do what he did. He said that the twins used his conduct as an "excuse" for running away from home. He felt that none of the three children experienced any harm or injury or ill effects from his activities with them. Dr. Stephens, a psychologist with experience in similar cases, testified that males who are involved in such activities do not expect or intend that the females will sustain any injury. He admitted that in most instances such a sexual relationship does lead to emotional problems on the part of the recipients of such abuse.

The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *State Farm Mutual Automobile Ins. Co.* v. *Belshe,* 195 Ark. 460, 112 S.W.2d 954 (1938). This means that the policy exception excludes coverage for injuries which the average run of reasonable people would expect or intend to inflict by engaging in the conduct in question. Hence we said in the *Talley* case that there would be no coverage if the insured intended to shoot the injured plaintiffs, but if it was mere negligence on the insured's part there would be coverage.

In the present case McGinnis's repeated intentional acts were felonies, prohibited by the criminal law. McGinnis

says that nevertheless he did not mean any harm to Vicky Lynn, and Dr. Stephens says that other males holding the same peculiar notions of proper conduct do not intend any harm to their victims. There was a similar disclaimer of specific intent in an Arizona case in which a high school student struck a classmate in the face, causing serious injuries. *Clark* v. *Allstate Ins. Co.*, 22 Ariz. App. 601, 529 P. 2d 1195 (1975). From the opinion: "However, the act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law."

The test is what a plain ordinary person would expect and intend to result from a mature man's deliberately debauching his six-year-old stepdaughter and continuing to do so for years. We agree with the view expressed by the dissent in the Court of Appeals in this case, that for a stepfather in such a situation "to claim that he did not expect or intend to cause injury, flies in the face of all reason, common sense and experience." We need not belabor the point to express our conviction that the chancellor's conclusion in this case was clearly erroneous.

Reversed, a declaratory decree to be entered in harmony with this opinion.

HOLLINGSWORTH, J., dissents.

P. A. HOLLINGSWORTH, Justice, dissenting. I disagree with the majority that the chancellor's decree was clearly erroneous. Our holding in *Talley* v. *MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d (1981) was that a fact issue existed where an insured intentionally fired a shotgun in the direction of others he intended to hit or injure.

In the case before us, the chancellor found that while McGinnis intended to commit the acts complained of, the appellant had not met its burden of proof in establishing that he either intended or expected any injury or damage to his stepdaughter. The chancellor viewed the evidence in the

proceedings before him clearly showing that McGinnis did not intend or expect his stepdaughter to sustain injuries by reason of his acts.

In support of Mr. McGinnis' testimony, Dr. Douglas A. Stevens, who has a Ph.D. in psychology and has encountered numerous cases of this type, testified that males who engage in this type of sexual activity generally perceive it as an intimate and affectional relationship, with positive emotions flowing in both directions. It was Dr. Stevens' opinion that McGinnis perceived his relationship with his stepdaughter to be an intimate one where both received positive benefits.

I agree with the view expressed by the affirming judges in the Court of Appeals in this case that "the only way to find that he intended harm to result would be to find that harm was a natural and foreseeable consequence of his acts, and that approach was specifically rejected in *Talley*." I think the chancellor correctly analyzed the evidence and the law, and that his decision was correct.

I would affirm.