Gary L. KLATT, Plaintiff and Appellant,

v.

The CONTINENTAL INSURANCE COMPANY; First Insurance Clark; and Rick Worth, individually and as agent of First Insurance Clark, Defendants and Appellees,

and

The City of Clark, South Dakota, Defendants.

No. 15536.

Supreme Court of South Dakota.

Argued April 23, 1987.

Decided July 8, 1987.

R. Greg Bartron of Osheim, Fox, Bartron & Wiles, Watertown, for plaintiff and appellant.

Ellsworth E. Evans and Edwin E. Evans of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee Continental Ins. Co.

Joseph P. Barnett of Siegel, Barnett & Schutz, Aberdeen, for defendants and appellees First Ins. Clark and Rick Worth.

SABERS, Justice.

Gary L. Klatt (Klatt) appeals summary judgment orders entered against him and in favor of Continental Insurance Company (Continental) and First Insurance Clark and Rick Worth (FIC/Worth). We affirm.

*Facts*

On December 28, 1980, City of Clark Police Chief Robert J. Moden (Moden) and Police Officer David Lee Momsen (Momsen) committed an assault and battery upon Klatt while arresting him several miles outside the City of Clark, South Dakota. Klatt was charged with speeding, eluding police officers, aggravated assault, and resisting arrest.[1] On June 24, 1981, Klatt initiated a civil suit against Moden, Momsen, and the City of Clark[2] for the injuries he sustained in the incident. In his amended complaint, Klatt alleged assault and battery, unlawful arrest, false imprisonment, invasion of privacy, violation of constitutional civil rights, and defamation. According to the complaint, after the officers handcuffed Klatt, they slammed him against his automobile and proceeded to kick, knee, punch, hit, club, and viciously beat him about the head and body. Klatt sustained severe and extensive bodily injuries that included chemical burns from

---

1. The jury found Klatt not guilty on all charges relating to the December 28, 1980 incident.

2. The City of Clark was dismissed from the lawsuit on the basis of sovereign immunity. No appeal was taken by Klatt.

mace to his face and eyes which seriously impaired his vision. He sued for $500,000 in general damages and $500,000 in exemplary damages. Moden and Momsen did not appear and in a jury trial on September 15, 1983, Klatt was awarded a total judgment of $436,115.17, which included $250,000 compensatory and $125,000 punitive damages.

The judgment remained unsatisfied. Consequently, Klatt brought suit on May 21, 1984, against Continental and FIC/Worth to recover the unsatisfied judgment entered against Moden and Momsen. As against Continental, Klatt sought to include liability for the actions of the police officers within the comprehensive general liability insurance policy it issued to the City of Clark. Klatt also sought to recover from the City's insurance agent (FIC) and its employee (Worth) for their failure to obtain liability insurance for City employees such as Moden and Momsen, for acts committed while on duty pursuant to SDCL 9–12–7.

Klatt, Continental, and FIC/Worth filed separate motions for summary judgment. On August 19, 1986, the trial court denied Klatt's motion and granted summary judgment in favor of Continental and FIC/Worth.

### Klatt's Claims

Klatt claims that Continental, or in the alternative, FIC/Worth, are liable for the unsatisfied judgment because (1) Moden and Momsen's conduct constituted an "occurrence" within the Continental policy or (2) FIC/Worth negligently failed to provide the City with insurance to cover the acts of Moden and Momsen committed within the scope of their official duty in accordance with SDCL 9–12–7.

### Summary Judgment

Summary judgment is authorized only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact. SDCL 15–6–56(c); *Trapp v. Madera Pacific, Inc.*, 390

N.W.2d 558, 564 (S.D.1986) *citing Nemec v. Deering*, 350 N.W.2d 53, 55 (S.D.1984); *Caneva v. Miners and Merchants Bank*, 335 N.W.2d 339, 341 (S.D.1983). The burden is on the moving party to clearly show that there is no genuine issue of material fact. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Trapp, supra* at 562; *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). When no genuine issue of material fact exists in a case, the legal questions may be properly decided by summary judgment. *Hamaker v. Kenwel-Jackson Mach., Inc.*, 387 N.W.2d 515 (S.D.1986); SDCL 15–6–56(c). Therefore, we affirm only if there are no genuine issues of material fact and the legal questions have been correctly decided. *Trapp, supra*. There are no genuine issues of material fact here,[3] so we proceed to the legal questions.

1. CONTINENTAL'S POLICY LANGUAGE EXCLUDES LIABILITY FOR INTENTIONAL ACTS

On January 30, 1986, a hearing was held on Klatt and Continental's motions for summary judgment. Klatt argued that:

—Insurance contracts should be construed liberally and in favor of the insured;

—Any ambiguity in an insurance contract must be construed against the insurer;

—The personal liability endorsement, although not a part of the instant contract of insurance, shows that coverage was available for the actions of Moden and Momsen;

—SDCL 9–12–7 mandates that city employees should be covered by liability insurance, and that this statute must be incorporated into this insurance contract.

Klatt is correct in reciting the general rule that an insurance contract is to be construed liberally in favor of the insured and strictly against the insurer. However, he neglects to go far enough in his recita-

---

**3.** *See* issue 3, note 7, *infra.*

tion. There are definite limitations to the application of this rule. *Strong v. State Farm Mutual Ins. Co.*, 76 S.D. 367, 369, 78 N.W.2d 828, 829 (1956). The rule of liberal construction applies *only* where the language of the insurance contract is ambiguous and susceptible of more than one interpretation. *Id.* It is further limited by the fact that the contract language cannot be construed other than according to its plain and ordinary meaning. *Id.* Therefore, this rule does not permit the court to make a forced construction or a new contract of insurance for the parties. *Id. See, e.g., Larson v. Continental Casualty Co.*, 377 N.W.2d 148 (S.D.1985); *Great Central Ins. Co. v. Roemmich*, 291 N.W.2d 772 (S.D. 1980); *Grandpre v. Northwestern Nat'l Life Ins. Co.*, 261 N.W.2d 804 (S.D.1977). The facts of this case place it *within* the limitations rather than within the general rule.

The insurance contract Continental issued to the City of Clark provides in part:

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

\* \* \* \* \* \*

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

■ The policy defines "occurrence" as "an *accident*, including continuous or repeated exposure to conditions, which re-

sults in bodily injury or property damage *neither expected nor intended from the standpoint of the insured*[.]" (emphasis added). Continental concedes that the police officers were "insureds" under this policy. It contends, however, that the policy language is clear and unambiguous in its exclusion of liability for intentional acts, thus making construction of the contract unnecessary. Continental argues that Moden and Momsen intended to cause Klatt's injuries and that their conduct was neither accidental, nor unexpected or unintentional from the standpoint of the officers. It is Continental's contention, therefore, that the police officers' conduct was not an "occurrence" which would obligate it under the plain terms of the policy.

In *Travelers Indem. Co. v. Walburn*, 378 F.Supp. 860 (D.D.C.1974), the policy provided coverage for bodily injury "caused by an occurrence," which term was defined as an accident resulting in bodily injury "neither expected nor intended from the standpoint of the Insured." *Id.* at 862. The court stated:

[T]he question of coverage in this case rises or falls on whether the killing was an accident 'neither expected nor intended from the standpoint of the Insured.' ... [T]he court cannot find that this exclusion is in any way ambiguous. The language, an accident 'neither expected nor intended from the standpoint of the Insured,' means simply that if [insured] either intended to do serious bodily injury to [victim] or expected such a result from his actions, then there is no coverage.

*Id.* at 865–866. Similarly, in *Briscoe v. Travelers Indem. Co.*, 571 P.2d 226 (Wash. App.1977), the court wrote:

The policy before us is not ambiguous. Under it, an 'occurrence' covered by the personal liability provisions of the policy is 'an accident ... which results ... in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.' In order for the minor insured to be covered for the consequences of his actions, his tort must have been an 'accident' and the accident

must have resulted in unexpected and unintentional injuries.

Where the minor insured allegedly viciously assaulted and beat another youngster, we cannot conclude that the means was accidental. (citations omitted)

*Id.* at 228–229. Courts in other jurisdictions which have considered this same type of provision have uniformly held it to be clear and unambiguous in its exclusion of intentional acts.[4]

Following the *Walburn* and *Briscoe* cases, the present coverage question stands or falls on whether Klatt's injuries were caused by an accident "neither expected nor intended from the standpoint of" Moden and Momsen. In his amended complaint, Klatt alleged the intentional torts of assault and battery, false imprisonment, and defamation. The jury was instructed as to the essential elements of these intentional torts. Following the jury verdict which awarded Klatt $125,000 in punitive

damages, the trial court entered Findings of Fact and Conclusions of Law on October 24, 1983. The court's findings and conclusions[5] support the contention that Klatt's injuries were not accidental.

The evidence shows that Moden and Momsen intended to cause Klatt's injuries as alleged in the amended complaint. Klatt testified that the police officers acted maliciously and without provocation. Klatt cannot now claim a better version of the facts than his own testimony. *Swee v. Myrl & Roy's Paving, Inc.,* 283 N.W.2d 570, 572 (S.D.1979). Nor can he presently claim that his beating and unlawful arrest were merely unexpected and unintended "accidents." *Norman v. Ins. Co. of North America,* 218 Va. 718, 239 S.E.2d 902, 905 (1978). Based on the record and the foregoing authorities, we find that Klatt's injuries were caused by the intentional acts of Moden and Momsen who expected the natural consequences of their actions. There-

---

4. *See, e.g., Western Casualty and Surety Group v. Coloma Township,* 140 Mich.App. 516, 364 N.W.2d 367 (1985); *Bohnsack v. Employers Ins. of Wausau,* 708 F.2d 1361 (8th Cir.1983); *Commercial Union Ins. Co. v. Mauldin,* 62 N.C.App. 461, 303 S.E.2d 214 (1983) (*Held:* homeowner's policy exclusion for "bodily injury or property damage which is either expected or intended from the standpoint of the insured," meant that policy excluded from coverage bodily injury caused by insured's intentional acts, determined from insured's point of view.); *Transamerica Ins. Co. v. Thrift-Mart, Inc.,* 159 Ga.App. 874, 285 S.E.2d 566 (1981) (Policy exclusion excluding liability for property damage "either expected or intended from the standpoint of the insured" *held* clear and unambiguous.); *Aetna Casualty and Surety Co. v. Freyer,* 89 Ill.App.3d 617, 44 Ill.Dec. 791, 411 N.E.2d 1157 (1980); *Northwestern Nat'l Cas. Co. v. Phalen,* 182 Mont. 448, 597 P.2d 720, 724 (1979) ("It is clear therefore, that the insured here would be debarred from coverage in those cases where his deliberate acts or assaults resulted in injuries which would be *expected or intended by him* to result from his deliberate acts."); *Steinmetz v. Nat'l Am. Ins. Co.,* 121 Ariz. 268, 589 P.2d 911 (1978); *Hartford Fire Ins. Co. v. Wagner,* 296 Minn. 510, 207 N.W.2d 354 (1973). *Hartford Accident and Indem. Co. v. Krekeler,* 363 F.Supp. 354 (E.D.Mo. 1973), *rev'd on other grounds,* 491 F.2d 884 (8th Cir.1974) (*Held:* defendant's intentional battery was not an "occurrence" within the comprehensive general coverage of the policy which excluded intended bodily injury.); *Lively v. City of Blackfoot,* 91 Idaho 80, 416 P.2d 27 (1966).

5. Finding of Fact XX provides in part:

... Moden and ... Momsen handcuffed, struck, beat, kicked and clubbed the Plaintiff, sprayed the Plaintiff with mace, purported to arrest the Plaintiff, confined the Plaintiff to the rear seat of the patrol car, took the Plaintiff to the City of Clark against his will, ...

Conclusions of Law VI and XV provide in part:

On December 28, 1980, ... Moden and ... Momsen each intended to cause a harmful or offensive contact with the Plaintiff Klatt, and by their acts they put the Plaintiff in imminent apprehension.... Moden and Momsen assaulted the Plaintiff Klatt, and each and all such assaults were committed under the color of law and within the scope of their employment as law enforcement officers for the City of Clark, South Dakota. In addition, ... Moden and ... Momsen intentionally contacted Plaintiff Klatt in an unlawful, harmful or offensive manner. Each and every such contact was battery[.] ... Each and every act of assault and battery subjected the Plaintiff Klatt to more restraint and force than was necessary for the exercise of police authority over a private citizen.

. . . .

The conduct of ... Moden and ... Momsen shows malice, fraud and oppression, as well as reckless or callous disregard of or indifference to the Plaintiff's lawfully protected rights and interests.

fore, Continental is not obligated under the policy for the unsatisfied judgment.

Klatt also argues that the Personal Injury Liability Endorsement (endorsement) which was available to the City of Clark, (although not contracted for), shows that coverage was obtainable for the police officers' actions. This argument is without merit against Continental because the endorsement was not a part of the policy.

## 2. SDCL 9–12–7 DOES NOT MANDATE THE PURCHASE OF LIABILITY INSURANCE FOR INTENTIONAL ACTS OF MUNICIPAL EMPLOYEES

Klatt contends that SDCL 9–12–7 must be incorporated by law into Continental's insurance contract with the City of Clark. He further contends that FIC/Worth's failure to provide this type of coverage in accordance with the statute obligates them for the unsatisfied judgment. SDCL 9–12–7 provides:

*Liability insurance for protection of municipality, officers and employees.* Every municipality shall have the power to obtain and pay for all forms of liability insurance protecting and insuring the municipality against such acts or omissions for which the municipality may be legally liable. The liability insurance coverage obtained shall provide protection for the municipal officers and employees in the performance of official duties and against acts committed by them that could be reasonably considered to be within the scope of their official duties.

Klatt argues that prior to the 1978 amendment, SDCL 9–12–7 merely enabled a municipality to obtain liability insurance if it elected to do so. He further argues, however, that once the Legislature added the second sentence to this statute, it mandated municipal officers to procure a broad scope of liability coverage after those officials made the decision to purchase liability insurance in the first place. Therefore, Klatt construes SDCL 9–12–7 to require the City of Clark, through FIC/Worth, to purchase liability insurance for Moden and Momsen's intentional torts.

At the hearing on Klatt's motion for summary judgment, the trial court made the following observation about Klatt's interpretation of SDCL 9–12–7.

[I]t [SDCL 9–12–7] says liability insurance obtained. What purpose does obtain have under your theory? Obtain would be a useless word if I would read it in the sense that you say I should read it. I could strike it out and it would read the same thing.

This court has ruled that we assume statutes "mean what they say and that the legislators have said what they meant." *American Rim and Brake, Inc. v. Zoellner,* 382 N.W.2d 421, 424 (S.D.1986); *Crescent Electric Supply Co. v. Nerison,* 89 S.D. 203, 210, 232 N.W.2d 76, 80 (1975). When the language of a statute is clear, certain, and unambiguous, there is no need for construction, and this court's only function is to declare the meaning as clearly expressed in the statute. *Matter of Aiken,* 296 N.W.2d 538, 540 (S.D.1980); *State Highway Commission v. Wieczorek,* 248 N.W.2d 369, 372 (S.D.1976).

■ Following the trial court's rationale, and the arguments of Continental and FIC/Worth, SDCL 9–12–7 is an *enabling* statute which empowers municipalities to purchase insurance against acts for which it, or its employees, may be legally liable. It is not a legislative mandate to municipalities to purchase and to the insurance industry to provide all forms of coverage as asserted by Klatt. The statute gives a municipality the "power to obtain all forms of liability insurance." The plain meaning of the statute leaves the form and scope of the coverage entirely up to the discretion of the municipality.

As argued by FIC/Worth, SDCL 9–12–7 does not require that once *any form* of liability insurance is obtained for *any risk* whatsoever, that the municipality must then provide coverage to its officers for personal injury claims. They argue that the word "shall" as used in this statute, only means that once liability insurance is purchased on behalf of a municipality, then

liability insurance *shall* also be purchased for its officers and employees acting within the scope of their official authority. If Klatt's theory were followed, SDCL 9–12–7 would require a municipality to purchase every conceivable form of insurance coverage available for each of its officers and employees despite the expense.

The major problem with Klatt's argument is that SDCL 9–12–7 does not mandate the purchase of blanket liability insurance to cover all risks regardless of the cost. We find the trial court's analysis of SDCL 9–12–7 more acceptable and we adopt it.[6]

### 3. KLATT'S STANDING TO SUE CITY'S INSURANCE AGENTS FOR FAILURE TO PROVIDE ADEQUATE INSURANCE COVERAGE

Klatt argues that FIC/Worth negligently failed to fully insure the City of Clark under SDCL 9–12–7. Klatt also argues that FIC/Worth's negligent failure to provide the liability insurance as required by SDCL 9–12–7, raises genuine issues of material fact, especially when the endorsement was available.[7] By misconstruing the statute, Klatt attempts to impose a duty upon FIC/Worth which was not intended by the Legislature. FIC/Worth did not have the authority to decide whether the City of Clark should purchase any particular form of liability insurance. That decision rested with the discretion of the City of Clark. FIC/Worth contends that their duty was no more than to provide the insurance requested, *citing Moore v. Kluthe and Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260 (1975). Although we do not agree with FIC/Worth's characterization of their minimal duty to their insured under *Moore, supra,* neither do we find any genuine issues of material fact.

■ FIC/Worth contends that Klatt has failed to show that he was an intended beneficiary under the contract of insurance between the City of Clark and FIC/Worth. They further argue that Klatt has not obtained an assignment of claims and rights from the City which would entitle him to pursue an action directly against FIC/Worth for breach of contract or failure to procure insurance. *See Peak v. Bosse,* 202 Neb. 1, 272 N.W.2d 750 (1978); *Rihon v. Wilson,* 415 So.2d 94 (Fla.Dist.Ct. App.1982). Klatt claims standing to sue under SDCL 58–23–1 because he is an injured person whose execution upon a final judgment was returned unsatisfied against the insureds, Moden and Momsen.

SDCL 58–23–1 provides:

All liability insurance policies issued in this state shall provide in substance that if an execution upon any final judgment in an action brought by the injured or by another person claiming, by, through, or under the injured, is returned unsatisfied, then an action may be maintained by the injured, or by such other person against the insurer under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and

---

**6.** Continental and FIC/Worth also make the public policy argument that as a general rule, one cannot insure himself against the consequences of his wilful acts, committed with the intent to inflict injury. 6B Appleman, *Insurance Law and Practice* § 42.52 at 7 (1979); 9 Couch on Insurance 2d, § 39:15 at 506–507 (1985 ed.) ("Any insurance which purports to protect the insured against any loss which he may purposely and wilfully cause, or which may arise from his immoral, fraudulent, or felonious conduct, is void as against public policy."); *Zeigler v. Ryan,* 63 S.D. 607, 262 N.W. 200 (1935) (an agreement to indemnify another against unlawful acts involving moral turpitude, is void if the unlawful act is known to such person at the time of its commission); SDCL 53–9–3.

**7.** Klatt attempted to use the affidavit of Judith A. Huisenga to raise a genuine issue of material fact in relation to FIC/Worth's alleged misrepresentation of the insurance they sold to the City of Clark. This affidavit marginally conforms to the requirements of SDCL 15–6–56(e). Huisenga was not a city council member. Her allegation that the City of Clark had an insurance policy which would cover it for "all forms of liability" is not based on personal knowledge nor is it substantiated by specific facts. Nowhere does she state that FIC/Worth failed to procure insurance that was requested by the City, nor does she state that FIC/Worth misrepresented the scope of coverage in the instant policy. This is not determinative, however, because of our holding on Klatt's standing to sue under SDCL 58–23–1.

every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding.

The problem with Klatt's argument is that this statute provides a direct action against the insurer (for the insureds) only "under the terms of the policy." In other words, if there was insurance coverage "under the terms of the policy," Klatt could prevail against the insurer but not against the insured's insurance agents. As indicated above in point 1, there is no coverage under this policy. In addition, SDCL 58–23–1 does not provide an injured person the right to bring an action against an insured's insurance agent for failure to provide full coverage. Therefore, Klatt does not come within the statute and he has no standing to sue the City's insurance agents for claimed inadequate coverage.

Therefore, we affirm the summary judgments in favor of Continental and FIC/Worth.

All the Justices concur.