FARMERS INSURANCE COMPANY, Inc. *v.*
Buddy SUITER

CA 97-887                                          964 S.W.2d 408

Court of Appeals of Arkansas
Division II
Opinion delivered March 18, 1998

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Julia L. Busfield*, for appellant.

No response.

SAM BIRD, Judge. Farmers Insurance Company, Inc., appeals from a decision of the Crittenden County Circuit Court, which granted a partial summary judgment to appellee, Buddy Suiter, finding that appellant had a duty to defend appellee under a policy of homeowner's insurance. We reverse.

On June 5, 1992, Vera Simonetti filed a complaint against appellee Suiter alleging that appellee had placed numerous anonymous telephone calls to her for the purpose of harassing, threatening, and frightening her, and seeking damages for causing humiliation, mental anguish, and emotional and physical distress. At the time of the alleged telephone calls, appellee was the insured under a policy of homeowner's insurance issued by appellant. By

virtue of that insurance policy, the appellant initially hired the Blytheville law firm of Reid, Burge, Prevallet & Coleman (hereinafter Reid law firm) to provide appellee with a defense to Simonetti's claims, but reserved the right to terminate its defense if it determined that, under the policy, no coverage existed to Simonetti's claims. Appellant later contended that, based upon the allegations of Simonetti's complaint, no possibility of coverage existed for those claims and it had no duty to defend appellee against Simonetti's claims or to pay any judgment that might be rendered against appellee. Thereafter, Reid law firm attempted to withdraw as attorneys for appellee, alleging that appellant had no duty to defend. The court at first entered an order that permitted the withdrawal, but it later set aside that order after learning that Simonetti had filed an amended complaint alleging that even though appellee's conduct in making the telephone calls was intentional, appellee "may not have intended the results," and that in the alternative, Simonetti's damages were "negligently inflicted, should the jury find that they were not intentionally inflicted."

On May 20, 1993, appellee filed a third-party complaint against appellant seeking to establish that his homeowner's policy provided coverage for Simonetti's claims and that appellant had a duty to defend him against those claims.[1] Appellant denied that its policy imposed upon it a duty to provide either. On July 7, 1996, appellant filed a motion for summary judgment on the third-party complaint, arguing that based upon the definition of the word "occurrence" contained in the policy and the language of the policy stating that it provided no coverage for intentional acts, it had neither a duty to defend nor a duty to pay damages. Appellee responded that there were questions of fact as to whether the policy provided coverage, and he also filed a motion for partial summary judgment on the issue of appellant's duty to defend. The court entered an order granting appellee's motion for partial summary judgment and denying the appellant's motion for summary judgment. The court severed the issues of the duty to defend and

---

[1] Because of the obvious conflict of interest created for the Reid law firm as a result of the filing of this third-party complaint, the court allowed Reid law firm to withdraw as attorneys of record for appellee without prejudice to appellee's claims that appellant owed him a defense and the duty to pay damages under his homeowner's policy.

the duty to pay damages, ordering that appellant had a duty to provide a defense, but holding in abeyance the issue of appellant's duty to pay damages until the resolution of Simonetti's claim against appellee. The court ordered that appellee's own personal attorney be paid by the appellant.

On October 14, 1995, a jury returned a verdict in favor of Simonetti and against appellee and awarded compensatory damages of $1,000 and punitive damages of $10,000. On November 18, 1996, the appellant renewed its motion for summary judgment, contending that there was no duty to pay damages in the amount of the judgment against appellee, and for reconsideration of the court's order granting partial summary judgment in favor of appellee on the issue of whether appellant had a duty to defend. On April 28, 1997, the court granted the appellant's summary judgment motion on the issue of duty to pay damages but denied the appellant's motion for reconsideration of his previous order finding that appellant owed a duty to defend.

Appellant filed its notice of appeal from the April 28 order, alleging that the court erred in finding that the appellant had a duty to defend because the insurance policy did not cover intentional torts. Further, appellant contends that "This amendment to [the] complaint occurred after it was apparent there was no coverage and would be no defense and was clearly intended to attempt to trigger coverage."

It is a well-settled rule that summary judgment is an extreme remedy and is only proper when the pleadings and proof show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Talley v. MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981). The standard of review for appealing the grant of summary judgment is well-established: this court need only decide if the granting of the summary judgment was appropriate based upon whether the evidentiary items presented by the moving party left a material question of fact unanswered. The moving party has the burden of sustaining the motion for summary judgment. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts

and inferences must be resolved against the moving party. *Sublett v. Hipps*, 330 Ark. 58, 952 S.W.2d 140 (1997). *See also Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997); *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996).

██ The general rule is that the pleadings against the insured determine the insurance company's duty to defend. *Madden v. Continental Cas. Co.*, 53 Ark. App. 250, 922 S.W.2d 731 (1996). The duty to defend is broader than the duty to pay damages, and the duty to defend arises if there is a possibility that the damage may fall within the policy coverage. *Id.* This court construes the language of an insurance policy in its clear, ordinary, and popular sense. *Tri-State Ins. Co. v. Sing*, 41 Ark. App. 142, 850 S.W.2d 6 (1993).

Simonetti first alleged that the appellee intentionally made harassing phone calls with the intent to cause her to suffer humiliation, mental anguish, and emotional and physical distress. Further, she alleged "such calls were made with knowledge that Simonetti would become emotionally and physically distressed and with the intent to harass, disturb, annoy, and molest Simonetti. Such calls were made with a wanton and reckless disregard of the consequences to Simonetti." She later amended her complaint to state that appellee intended to make the calls but may not have intended the results that the calls produced.

The language of the policy in question reads: "We shall pay all damages from an occurrence which the insured is legally liable to pay because of bodily injury or property damage covered by this policy." Occurrence is defined in the policy as "a sudden event, including repeated or continuous exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured."

This issue has been presented to the courts before; however, the factual basis has been different. In *Talley v. MFA Mutual Ins. Co.*, *supra*, three teenagers were attending a party when a fight ensued. One of the teenagers, who had been drinking, left the party and procured a shotgun. He came back and shot out the windows of one of the cars in the driveway. Then he drove around the block, and during that time, the two other teenagers

came outside and hid behind the cars. The teenager with the shotgun fired again, hitting the others, but claiming that he did not know they were outside and, because it was at night, he could not see them hiding behind the cars. The supreme court held that the trial court erred in granting summary judgment because "a fact issue exists as to whether he intended to hit or injure [the victims]. Many acts are intentional in one sense or another; however, unintentional results often flow from intentional acts." *Id.* at 274, 620 S.W.2d at 263. The court distinguished unintentional acts from intentional acts and stated, "we see no violation of public policy in allowing recovery in circumstances in which it is shown that results were accidental or unintended." *Id.* The court also held that the trial court had erred in granting summary judgment against the insureds, the parents of the teenager firing the shots, because the result of the act was not expected or intended when looked at from the standpoint of the insureds. *Id.*

In *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984), the court reversed a court of appeals decision that affirmed a ruling by the trial court that there was coverage under a homeowner's insurance policy where even though the acts of sexual assaults and abuse inflicted by a man against his stepdaughter were intentional, the results of such abuse were not intentional. The court wrote that the test is "what a plain ordinary person would expect and intend to result from a mature man's deliberately debauching his six-year-old stepdaughter and continuing to do so for years," and concluded that "it flies in the face of all reason, common sense, and experience" for the perpetrator to claim that he did not intend by his actions to cause injury to the child. *Id.* at 93, 666 S.W.2d at 691.

*Talley* and *McGinnis* are clearly distinguishable from each other. In *Talley v. MFA Mutual Ins. Co.*, *supra*, the supreme court upheld a trial court's determination that there was a fact question as to whether the injury to the two teenagers was the unintentional result of an intentional act where the teenager firing the shots contended that he could not see that the victims were outside since it was dark and they were hiding behind the car. However, in *CNA Ins. Co. v. McGinnis*, *supra*, the insured clearly intended the results of his actions. He was cognizant of what he

was doing and could not have reasonably believed that no harm would occur.

■ We find the case at bar to be controlled by *CNA Ins. Co. v McGinnis, supra.* The appellee in this case intentionally made numerous anonymous telephone calls to Simonetti. Like the supreme court in *McGinnis,* we find it hard to say that a plain ordinary person would not expect and intend both emotional and physical distress to result from a continuing barrage of harassing telephone calls. For the appellee to declare that he did not intend to cause injury "flies in the face of all reason, common sense and experience." *CNA Ins. Co. v. McGinnis, supra.* Therefore, we find that the trial court erred in granting appellee's motion for summary judgment and in denying appellant's motion for summary judgment. We reverse and order the trial court to enter an order consistent with this opinion.

Reversed.

MEADS and ROAF, JJ., agree.