ALBER v FARM BUREAU MUTUAL INSURANCE COMPANY OF
MICHIGAN

Docket No. 111673. Submitted February 13, 1990, at Lansing. Decided
March 4, 1991, at 9:00 A.M. Leave to appeal sought.

Linda Alber, by her next friend, Nora J. Alber, and Donald L.
Smith brought an action in the Washtenaw Circuit Court
against Farm Bureau Mutual Insurance Company of Michigan,
seeking a declaration that Farm Bureau had a duty, under a
homeowner's insurance policy, to defend Smith against a per-
sonal injury action brought by Linda Alber. In her personal
injury action Linda Alber, who was twenty-seven years old at
the time of the underlying incident and is mildly retarded,
sought damages for the alleged physical, neurological, and
emotional harm she sustained from sexual intercourse with
Smith. The court, Edward D. Deake, J., granted summary
disposition for the defendant, ruling that, while there was an
"occurrence" as defined in the insurance policy, the occurrence
came within the policy provision that excluded coverage for
intentional acts. Linda Alber appealed, and the defendant cross
appealed.

The Court of Appeals *held:*

A homeowner's insurance policy provision which excludes
from coverage injuries caused intentionally by or at the direc-
tion of the insured is applicable only if the insured intended
both the act which caused the injury and the injury.

1. The trial court erred in determining that the defendant
was under no duty to defend Smith. While Smith admitted that
he intended to have sexual intercourse with Alber, he denied
any intent to injure her and any awareness that she was
incapable of consenting to sexual intercourse because of her
mental disability. From the evidence presented, Smith's intent
to injure Alber cannot be presumed merely from the fact that
he had intentional sexual intercourse with her.

2. The trial court correctly determined that an occurrence

REFERENCES

Am Jur 2d, Insurance §§ 708, 709.

Construction and application of provision of liability insurance
policy expressly excluding injuries intended or expected by in-
sured. 31 ALR4th 957.

had taken place for purposes of the insurance policy. While the policy defined "occurrence" to mean an accident, it is possible to have an occurrence or accident arising out of the intentional conduct of an insured. Thus, the defendant cannot properly argue that because Smith's conduct was intentional there was no accident and, therefore, no occurrence under the policy.

Affirmed in part, reversed in part, and remanded.

INSURANCE — HOMEOWNER'S INSURANCE — EXCLUSIONS — INTENTIONAL ACTS — FAILURE TO DEFEND.

A homeowner's insurance policy provision excluding from coverage injuries caused intentionally by or at the direction of the insured is applicable only if the insured intended both the act which caused the injury and the injury; an intent to injure cannot be presumed merely from the fact that the insured had intentional sexual intercourse with a mildly retarded adult, and the insurer may not, on the basis of an intentional-acts exclusion, decline to defend the insured against a personal injury action arising out of the incident.

*Bishop & Shelton, P.C.* (by *Donald E. Shelton* and *Heidi L. Salter*), for Linda Alber.

*Plunkett & Cooney, P.C.* (by *Deanna E. Hazen*), for Farm Bureau Mutual Insurance Company of Michigan.

Before: MICHAEL J. KELLY, P.J., and WAHLS and SAWYER, JJ.

SAWYER, J. Plaintiff Linda Alber appeals, and defendant cross appeals, from an order granting defendant insurer's motion for summary disposition of plaintiffs' declaratory judgment action seeking a determination whether defendant had a duty to defend plaintiff Smith in a personal injury action brought against him by Linda Alber. We affirm in part and reverse in part.

The underlying action arose out of an incident which occurred on April 12, 1985, in which Smith engaged in sexual intercourse with Linda Alber. At the time of this incident, Alber was twenty-

seven years old, but was, according to an examining physician, "mildly retarded." After Alber informed her mother of the incident, the police were summoned. The police interrogated Smith, who gave a statement admitting that he had engaged in sexual intercourse with Alber and was aware that Alber suffered from a "learning problem," but stated that he did not believe that he was taking advantage of her because he understood that she had a boyfriend and that she had told him that she had had sex with this boyfriend. Smith further stated that Alber was a willing participant in the incident.[1]

Smith was initially charged with first-degree criminal sexual conduct, MCL 750.520b(1)(f), (g); MSA 28.788(2)(1)(f), (g). However, following a preliminary examination, the magistrate concluded that there was not sufficient evidence of personal injury to warrant binding Smith over on a charge of first-degree criminal sexual conduct and, instead, bound him over for trial on a charge of third-degree criminal sexual conduct, MCL 750.520d(1)(c); MSA 28.788(4)(1)(c). Smith was ultimately convicted of this charge and sentenced to serve a term of three to fifteen years in prison.

Alber filed a civil action against Smith, seeking compensation for alleged physical, neurological, and emotional damages suffered as a result of the incident. Smith then requested that the defendant insurer provide a defense under the applicable portion of Smith's homeowner's policy, but defendant refused, claiming that the policy did not cover Alber's action against Smith. Plaintiffs then

[1] It should be acknowledged, however, that Alber's testimony at the preliminary examination, held in conjunction with the criminal charges against Smith, suggested that she was not, in fact, a willing participant. The testimony presented at the preliminary examination also shed doubt on the issue of Alber's having a boyfriend with whom she was sexually active.

filed the instant action against defendant, seeking a declaratory judgment that defendant had a duty to defend and indemnify Smith. The trial court granted defendant's motion for summary disposition and denied plaintiffs' motion for a declaratory judgment, concluding that, while there was an "occurrence" as defined in the insurance policy, the occurrence comes within the intentional-acts exclusion provision in the policy. Plaintiff Alber then claimed an appeal to this Court, contending that the trial court erred in determining that the intentional-acts exclusion applied. Defendant cross appeals, claiming that the trial court erred in determining that plaintiffs' claim constituted an "occurrence" under the policy.

We first turn to the question raised by plaintiff on appeal, namely, whether the intentional-acts exclusion contained within Smith's homeowner's policy applies to the case at bar. We conclude that, with respect to the duty to defend, it does not. The insurance policy at issue includes a clause excluding from coverage injuries which are "caused intentionally by or at the direction of the insured." Where the exclusionary language requires that the injury be intentionally caused, the exclusionary clause is applicable only if the insured subjectively intended both his act and the resulting injury. *Allstate Ins Co v Freeman,* 432 Mich 656, 672, 709-710; 443 NW2d 734 (1989) (Opinions of Riley, C.J., and Boyle, J.).

While Smith readily admits that he intended to have sexual intercourse with Alber, he has consistently denied any intent to injure Alber, as well as any awareness that she was incapable of giving consent. Indeed, Smith affirmatively posits that he believed she was capable of giving consent in that she had informed him that she had a boyfriend with whom she was sexually active. In the com-

panion case to *Freeman, supra, Metropolitan Property & Liability Ins Co v DiCicco,* Justice BOYLE analyzed the matter, applying both an "intrinsic analysis" and an "extrinsic analysis." Applying Justice BOYLE's intrinsic analysis, Smith's statements themselves would prevent the conclusion that Smith intended to injure Alber and, therefore, defendant would have a duty to defend. See *Freeman, supra* at 710-711.

Justice BOYLE, however, also applied an extrinsic analysis, under which the issue of defendant's duty to defend is less clear. Specifically, Justice BOYLE discussed those cases where the insured's act was intentional but it is claimed that the resulting injury was unintentional. As Justice BOYLE explained, there are some cases where the intentional act does not compel the conclusion that the injury was also intentional, but there are other cases where the intentional act, can only result in injury:

> Utilizing a subjective standard for "expected or intended," courts have found that there was coverage when the intentional burning of property, but without the intent to injure or cause damage, in fact caused injury or damages. See, e.g., *Aetna Ins Co v Janson,* 60 Ill App 3d 957; 18 Ill Dec 143; 377 NE2d 296 (1978). Similarly, coverage has been found in cases in which guns were intentionally pointed, but the discharge or the striking of the injured party was unintentional. See, e.g., *Vanguard Ins Co v Cantrell,* 18 Ariz App 486; 503 P2d 962 (1972); *Jackson v Lajaunie,* 253 So 2d 540 (La App, 1971), aff'd in part and rev'd in part on other grounds, 264 La 181; 270 So 2d 859 (1972).
>
> Another class of cases involves an intentional act, the result of which injury can only occur. In these cases, some courts have quite reasonably presumed that the injury was intentional. Thus, in *Fireman's Ins Co v Smith,* 13 Ark App 250, 253-

254; 683 SW2d 234 (1985), cited by the Chief Justice, a wrongful death action was brought against the insured in alleging that the shooting of the victim was "willful, malicious and intentional." Since the language of the complaint in the underlying claim was controlling, it could only be presumed that the injury was intended and coverage was excluded. Similarly, in *Cavanagh v Ohio Farmer Ins Co,* 20 Ariz App 38; 509 P2d 1075 (1973), an intent to injure was presumed from the fact that the insured placed a loaded gun to the victim's head and pulled the trigger. Presumed intent can also be found in *CNA Ins Co v McGinnis,* 282 Ark 90; 666 SW2d 689 (1984), also cited by the Chief Justice. In *McGinnis* the insured caused injury to his minor stepdaughter through sexual abuse. The court rejected McGinnis' claim that although the sexual intercourse was intended, no *harm* was intended. The *McGinnis* court analogized to *Clark v Allstate Ins Co,* 22 Ariz App 601; 529 P2d 1195 (1975), in which no coverage was found as a matter of law, although the insured denied an intent to injure when striking the victim in the face with a closed fist. As explained in *McGinnis,* to claim that the insured did not expect or intend to cause injury "flies in the face of all reason, common sense and experience." *Id.* at 93.

The same cannot be said in this case. While DiCicco did intentionally brandish the knife and further "poked" Gravenmier in the chest with his other hand, it was apparently Gravenmier's own act of bravado which immediately preceded the injury. While it is true that facts may yet emerge in the underlying claim which would establish that DiCicco actually expected or intended to stab Gravenmier (as opposed to Gravenmier accidentally being cut), I cannot say on the present facts that the denial of an intent to injure "flies in the face of all reason, common sense and experience" so that intent to injure may be presumed. I cannot say that brandishing a knife always results in injury—that DiCicco's actions preclude coverage as a matter of law. [*Freeman, supra* at 718-720.]

Defendant submits to us that Smith's conduct falls within the category of cases of intentional acts from which injury can only occur. We disagree. As noted in Justice BOYLE's opinion, statutory rape cases have been held to come within this group of intentional acts. Indeed, this Court applied a similar principle in *Linebaugh v Berdish,* 144 Mich App 750; 376 NW2d 400 (1985). In *Linebaugh,* this Court applied the intentional-acts exclusion clause in an insurance contract where a twenty-one-year-old tortfeasor had nonconsensual sexual intercourse with a fourteen-year-old girl. The tortfeasor maintained that he had no intent to injure the victim. This Court concluded that the intent to injure can be inferred as a matter of law from the intentional act of having sexual intercourse with a minor. *Id.* at 762.

The case at bar is distinguishable from *Linebaugh,* as well as the cases discussed in *Linebaugh,* in that those cases all involve sexual intercourse with minors, including some cases involving incest. Thus, the condition which renders the victims unable to consent to the intercourse, their age, is readily apparent to the tortfeasor. Moreover, the inappropriate nature, indeed criminal nature, of the tortfeasor's conduct is also readily apparent, as well as the potential for injury to the victim. That is, in *McGinnis,* which was discussed by both the *Linebaugh* Court and Justice BOYLE in *Freeman,* the tortfeasor had sexually assaulted his stepdaughter from the time she was six years old until she was sixteen. Few would dispute that injury is the natural consequence of an adult having an incestuous sexual relationship with a child.

However, the connection between the intentional act in the case at bar and the certainty of injury resulting from that act is far more attenuated. Here, the victim was a twenty-seven-year-old

woman, not a child. Moreover, if we believe Smith's statements, although he was aware that the victim had a learning problem, he was not aware of the severity of her mental incapacity. If a jury were to believe Smith's testimony, it would be reasonable for the jury to conclude that Smith did not intend injury to Alber, nor was injury certain to follow the intentional act. That is, we certainly cannot presume an injury to result from consensual sexual relations between two consenting adults, nor can the facts presented in this case allow us to conclude that there is no dispute whether Smith was aware that Alber was mentally incapable of giving consent.[2] For these reasons, we conclude that on the facts of this case Smith's intent to injure cannot be presumed merely from the fact that he had intentional sexual intercourse with a twenty-seven-year-old woman who was under a mental disability.

We caution, however, that our decision today does not resolve the question whether defendant has a duty to indemnify. The duty to defend, in accordance with the language of the policy in this case, includes the duty to defend suits which are groundless, false, or fraudulent. As Justice Boyle explained in *Freeman, supra* at 701-706, 720-721, the duty to defend is not necessarily coextensive with the duty to indemnify and, while there may

---

[2] Assuming it would be appropriate to consider defendant's conviction for third-degree criminal sexual conduct, that would not allow us to reach the conclusion that Smith was aware that injury would necessarily follow his intentional act. To establish Smith's criminal liability, it was necessary to show that Smith either knew or *had reason to know* that the victim had a mental incapacity. Thus, the jury in the criminal trial could have concluded that defendant did not know of the victim's incapacity, but had reason to know. If Smith merely had reason to know of the victim's incapacity, but did not in fact subjectively realize and understand the victim's capacity, under the subjective test to be applied in the case at bar we cannot conclude that Smith intended to have sexual relations with the victim knowing that she suffered from mental incapacity.

be a duty to defend, ultimately there may not be a duty to indemnify even if the plaintiff in the underlying action prevails. The same principle applies to the case at bar. While we have concluded that defendant has failed to establish that the complaint against its insured clearly falls within the intentional-acts exclusion, this does not mean that the jury's ultimate determination in this matter might find facts which establish no duty to indemnify. Simply, the jury in this matter may ultimately conclude that Smith did, in fact, know that Alber was mentally incapable of giving consent to the sexual act and that Smith intended to injure Alber. If such are the findings of the jury, then defendant would have no duty to indemnify Smith. We only reach the more narrow conclusion that, given the unsettled nature of the facts in this case, defendant does have a duty to defend Smith as it is possible that the jury's factual findings in this matter could result in a verdict on a theory which comes within the coverage provisions of the insurance contract.

We next turn to the issue raised by defendant on cross appeal, namely, whether the trial court erred in determining that there was an "occurrence" within the meaning of the policy. The policy defines "occurrence" as meaning an "accident." Defendant argues that since Smith's conduct was intentional, there was no accident and, therefore, no "occurrence" under the policy. However, the meaning of the word "occurrence" was discussed in *Freeman, supra,* with the Court reaching a broad interpretation of "occurrence" and "accident" and, in particular, concluding that it is possible to have an occurrence or accident arising out of the intentional conduct of an insured. See *Freeman, supra* at 665-672, 706. Applying these principles to the case at bar, we agree with the

trial court that there was an "occurrence" in the case at bar.

For the above reasons, we conclude that the trial court erred in determining that the intentional-acts exclusionary clause in the insurance contract applies with respect to defendant's duty to defend. However, the trial court correctly concluded that there was an occurrence. Accordingly, we conclude that defendant does, in fact, have a duty to defend.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.[3] We do not retain jurisdiction. Plaintiff may tax costs.

---

[3] We had ordered the parties to also brief the issue whether Alber has standing to raise this issue since there is no privity between the parties to this appeal, and Alber does not as yet have a claim against defendant. Both parties filed briefs arguing that standing exists. Accordingly, we accept the parties' position on this issue without deciding whether Alber is, in fact, the proper party to pursue this appeal rather than Smith, the policyholder.