**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Jennifer LEWIS, et al., Defendants.**

**Civ. A. No. 89–C–419.**

United States District Court,
D. Colorado.

March 14, 1990.

Joel N. Varnell, Denver, Colo., for plaintiff.

Jack LeProwse, Westminster, Colo., for Lewis defendants.

Jon L. Holm, Denver, Colo., for Bills defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff, Allstate Insurance Company, filed this diversity action seeking a declaratory judgment that it is not obligated to provide coverage under a homeowner's policy.[1] Defendants are William and Viola Bills, the policy holders, their grandson, Brian Bills, their son, Bobby Bills, Jennifer Lewis, and her mother Jeanette E. Lewis. Plaintiff has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Defendants have responded by opposing the motion.

The parties have fully briefed the issues and oral argument would not materially

---

1. The policy in question contains the following exclusion: "We do not cover any bodily injury or property damages which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person."

assist my decision. Jurisdiction is based on 28 U.S.C. § 1332.

## I. BACKGROUND.

On September 24, 1987, seventeen-year-old Brian Bills, then living with his grandparents, wanted to stop thirteen-year-old Jennifer Lewis from "bugging" him and his friends on the telephone at odd hours of the night. Jennifer appears to have had a "crush" on Brian and continued to pester him despite his professed lack of interest. Brian concluded that brandishing his uncle's empty handgun at Jennifer would persuade her to desist in her demonstrations of affection for him. Unfortunately, Jennifer was not impressed when Brian confronted her with the empty handgun. To emphasize his resolve, Brian placed a bullet in the revolver and clicked the cylinder once to the right. Thinking that the chamber was empty, he pointed the gun at Jennifer's midsection and pulled the trigger, shooting her.[2] Jennifer suffered physical and mental injuries from the wound, requiring medical and psychiatric treatment that cost $28,885.97.

On September 25, 1987, a petition in delinquency was filed in the District Court for Adams County, Colorado, alleging first degree assault and two counts of menacing. On April 27, 1988, Brian pled guilty to first degree assault. The other charges were then dismissed.

The Bills and Lewis families contend that the shooting was accidental, and therefore the provision excluding coverage for intentional bodily injury should not apply. They also argue that the criminal acts exclusion, found in the same provision of the policy, should not apply because the Colorado Children's Code distinguishes between criminal acts committed by minors and those committed by adults. The Children's Code characterizes some criminal acts committed

by minors as "delinquent acts" rather than as criminal acts. Brian was adjudicated a juvenile delinquent. Therefore, the reasoning goes, Brian's act was not a criminal act.

Plaintiff maintains that the plain meaning of the policy exclusion's words must be literally enforced, and it thus asserts that it has no duty to indemnify the Bills for damages for which they may be held liable. Plaintiff seeks summary judgment, contending that Brian's conduct precludes any obligation on its part as insurer to indemnify or defend any of the defendants.[3]

Thus, I must determine whether the plaintiff insurer is required to provide coverage under the Bills' homeowner's policy for Jennifer Lewis' injuries. As indicated, the issue hinges on interpretation of the policy language excluding coverage for intentional or criminal conduct.

## II. DISCUSSION.

### A. *Application of Rule 56, Fed.R.Civ.P.*

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex* the Court held that Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

Rule 56 expressly assigns to the nonmoving party the burden of countering a sum-

**2.** Defendants have supplied an affidavit from the investigating officer who believes that the shooting was the unintentional result of Brian's reckless conduct and unfamiliarity with weapons.

**3.** Jennifer Lewis and her mother Jeanette filed an action in the District Court for Adams Coun-

ty, Colorado against Brian Bills, William Bills and a number of other defendants. On March 13, 1989, the plaintiff Allstate Insurance Company filed a complaint for declaratory relief in this Court, naming both Lewises and the Bills as defendants.

mary judgment motion by affidavits or other proper evidence. When a motion for summary judgment is made and properly supported the non-moving party:

> "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the ... [non-moving] party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the ... [non-moving] party does not so respond, summary judgment, if appropriate, shall be entered against the ... [non-moving] party." Rule 56(e), Fed.R.Civ.P.

When the party moving for summary judgment has successfully carried the burden of establishing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *The Criminal Act Exclusion.*

■ A juvenile delinquency proceeding is not a criminal prosecution. *S.G.W. v. People in the Interest of S.G.W.*, 752 P.2d 86, 88 (Colo.1988); *People ex rel. Terrell v. District Court*, 164 Colo. 437, 444, 435 P.2d 763, 766 (1967). Indeed, it is precisely "to protect the young from the stigma frequently associated with criminal proceedings" that a petition in delinquency is classified as civil in character. *S.G.W.* at 88 (quoting *S.A.S. v. District Court*, 623 P.2d 58, 60 (Colo.1981)). An adjudication of delinquency is a status determination, as opposed to a criminal conviction; its purposes and consequences are, by specific legislative design, different from those of a criminal proceeding. *People in Interest of J.J.*, 768 P.2d 754 (1988).

■ The policies underlying the distinction between a criminal prosecution and a delinquency adjudication are enumerated in Colo.Rev.Stat. § 19–1–102(1) (1978 & 1985 Supp.),[4] as follows:

"Legislative Declaration. (1) The general assembly declares that the purposes of this title are:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties whenever possible, including improvement of the home environment;

(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society."

In recognition of the Act's benevolent purposes, courts have consistently regarded the proceedings under it as civil rather than criminal in nature. *People in the Interest of M.C.*, 774 P.2d 857, 861 (Colo. 1989); *S.G.W. v. People*, 752 P.2d 86, 88 (Colo.1988); *S.A.S. v. People*, 623 P.2d 58, 60 (Colo.1981). Although many of the procedural safeguards guaranteed to criminal defendants are also afforded juveniles, that fact should not blur the significant distinctions between the two types of legislation. *People in Interest of M.C.*, 774 P.2d 857, 861 (Colo.1989).

Since Brian Bills was seventeen years old at the time of the shooting, he was adjudicated a delinquent. It is undisputed that he was charged with first degree assault under the Children's Code in a petition for delinquency and not by a criminal information as an adult would have been charged.

For these reasons, to characterize Brian's offense as criminal would thwart the clear intent of the Colorado General Assembly. Colorado courts, whose prece-

---

**4.** This statute was repealed and reenacted in 1987. It is now codified as Colo.Rev.Stat. § 19–1–102 (1988 Supp.).

dents are binding in this diversity case, have unequivocally supported the clear legislative mandate that young people are to be protected from the stigma attached to criminal proceedings. Therefore, I find and conclude that Brian's juvenile offense was a civil and not criminal wrong and his adjudication as a delinquent was a civil proceeding.

C. *The Intentional Act Exclusion.*

Coverage is excluded when the policy holder's act is intentional and causes harm that reasonably could have been expected to flow from the intentional act. Brian admits that he intended to frighten Jennifer by his ill-conceived scheme, and as stated he pleaded guilty to First Degree Assault. He is civilly liable for any harm that flowed from that assault. Plaintiff argues that the accidental shooting falls within the policy exclusion because there was a reasonable expectation of harm created when Brian assaulted Jennifer with a loaded gun. Thus, the issue is whether Brian's acknowledged intent to assault Jennifer may be transferred to an unintentional act—the accidental shooting.

### 1. Intent.

To be liable for assault it is not necessary to intend to inflict physical injury; all that is required is an intent to arouse apprehension of immediate harmful or offensive bodily contact. *Restatement (Second) of Torts*, § 32. Brian intended to pull the trigger in order to arouse apprehension in Jennifer, but he did not intend to fire a bullet from the gun near her or to strike her, inflicting physical injury upon her. He thought that the chamber was empty. Thus, Brian's judicial admission that he intended to assault Jennifer does not permit the conclusion that he intended to shoot her. Consequently, his intent to assault Jennifer cannot be transferred to

the ensuing physical harm caused by the accidental shooting.[5]

Plaintiff insurer asserts that the result of one's intentional acts cannot be unexpected if the result is the ordinary consequence of those acts. The numerous cases cited by the plaintiff in support of this thesis, however, are inapposite. Defendants contend that the shooting was the result of Brian's reckless conduct and unfamiliarity with guns, yet the plaintiff relies on cases involving the intentional firing of guns, the illegal discharge of hazardous substances, sexual molestation and battery. Plaintiff company's tautologous reasoning imprecisely combines two events, the assault and the shooting, into one intentional act. Clearly the assault was an intentional act, but as the investigating officer concluded, the shooting was accidental and not the ordinary consequence of the assault.

Plaintiff insurer implies that Brian intentionally shot Jennifer. Alternatively, the plaintiff suggests that its policy excludes coverage for injuries which may reasonably be expected to result from the intentional acts of an insured person. Plaintiff contends that even if the shooting was the result of Brian's reckless behavior and unfamiliarity with guns, it flowed from Brian's intentional act, the assault on Jennifer.

If Brian had intentionally fired the bullet at Jennifer, undoubtedly coverage would have to be denied. However, the plaintiff has offered no proof that Brian intended to shoot Jennifer. Defendants, including the victim of the shooting herself, apparently believe that the shooting was accidental. The investigating officer has concluded that the shooting was accidental.

For the reasons presented above, the plaintiff has not made a showing sufficient to establish absence of a genuine issue of material fact and thus cannot be relieved of

---

**5.** If Brian had intended to *fire the gun* in order to frighten Jennifer further, he could have been held liable for battery if the bullet had unexpectedly hit her, because his intent to assault her then could have been transferred to the shooting. *W. Prosser, Law of Torts,* 4th Ed. 1971, § 8. *See also Allstate Insurance Co. v. Steinemer,* 723 F.2d 873 (11th Cir.1984) (holding an intentional act exclusion inapplicable when

the insured intentionally does an act but has no intent to commit harm, even if the act involves foreseeable consequences of great harm or even amounts to gross or culpable negligence); *Butler v. Behaeghe,* 37 Colo.App. 282, 548 P.2d 934 (1976) (holding an exclusion for "intended or expected" bodily injuries inapplicable if the insured acts without any intent or any expectation of causing any injury, however slight).

its obligation to the insured at this point in the litigation. Therefore, I find and conclude that genuine issues of material fact preclude granting the plaintiff's motion for summary judgment.

Accordingly, IT IS ORDERED that the plaintiff's motion for summary judgment is denied.

Each party shall bear her, his or its own costs.