**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**John DILLARD, et al., Defendants.**

**Civ. A. No. 91–135–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Aug. 1, 1994.

William E. Cannon, Jr., Michael S. Meyer Von Bremen, Albany, GA, for plaintiff.

Craig A. Webster, Tifton, GA, for defendants.

OWENS, Chief Judge:

The court held a nonjury trial on May 18, 1994, in this declaratory judgment action initiated by Allstate Insurance Company ("Allstate") against their policy holders John and Margaret Dillard (collectively the "Dillards") and the injured party Michael Troy Griffin, Jr. ("Michael Griffin, Jr." or "Griffin"), by and through his parents Michael and Elsie Griffin (the "Griffins"). The Dillards brought a claim under their deluxe mobile-home owner's policy for injuries to Michael Griffin, Jr. which occurred in their home.[1] Allstate denies coverage under a policy exclusion. Previously, the court granted summary judgment in favor of Allstate, 799 F.Supp. 97, and the Eleventh Circuit Court of Appeals, 8 F.3d 36, reversed and remanded the case for trial. The court approached the nonjury trial with an open mind and now makes the following findings of fact and conclusions of law after careful consideration of all the evidence.

## I. FACTS

Allstate issued a deluxe mobilehome owner's policy to John and Margaret Dillard on

---

1. Michael Griffin, Jr. sued the Dillards in the Superior Court of Tift County seeking damages for his injuries. The Dillards turned to Allstate for indemnification and defense in the suit.

January 30, 1988. *See* Exhibit A to Complaint and Proposed Pretrial Order. The relevant policy exclusion is found in the section on guest medical protection.

> **Exclusions—Losses We Do Not Cover**
> 1. **We** do not cover any **bodily injury** which may reasonably be expected to result from the intentional or criminal acts of an **insured person** or which is in fact intended by an **insured person.** Deluxe Mobile Home Owner's Policy, Exhibit A to Complaint, p. 19 (emphasis as in original) ("Policy").

On June 19, 1991, LeShannon Corey Roberts ("Roberts"), a 13–year old, was playing in his grandparents' mobilehome with Michael Griffin, Jr., an 11–year old who lived nearby. Roberts lived with his grandparents and is an insured person under the policy. *See* Policy, p. 2. Roberts and Michael Griffin, Jr. had known each other for approximately one year at the time of the incident. Roberts found a key hidden in a dresser drawer and unlocked a chifforobe in a spare bedroom. Inside, he found two guns, a .357 and a .38 revolver, concealed under several blankets. Bullets lay beside the guns. Roberts put the guns in the waistband of his pants and the two boys left the mobile home to go to the store. Roberts denies knowing whether the guns were loaded.

Along the way, they encountered Jesse Evans and David Sellers, two young boys who lived in the neighborhood, and the foursome returned to the Dillards' home to play basketball. Before they reached the Dillards' trailer, Roberts wagered that he could blow them all away. (Trial transcript, p. 34; Sellers' deposition, p. 10; Evans' deposition, p. 8.) At the front door of the trailer, Roberts showed the boys the guns which had been in his waistband. (Trial transcript, p. 34; Sellers' deposition, p. 10; Evans' deposition, pp. 8–10.) He became more aggressive and ordered the boys inside the trailer. (Trial transcript, p. 29, 34; Sellers' deposition, p. 10; Evans' deposition, pp. 8–10.) Once inside, Roberts locked the front and back doors

of the trailer. When David Sellers and Jesse Evans tried to leave the trailer, Roberts threatened to shoot them. (Sellers' deposition, p. 20; Evans' deposition, pp. 10–11.) He then asked the boys, "which one of you wants to feel what its like to be shot." (Trial Transcript, p. 36.) Roberts aimed the .38 revolver, using his right hand, at each of the three boys and fired. (Trial Transcript, p. 29.) Each time, the gun fired no bullets. (*Id.*) Roberts then went into a bedroom and appeared to be loading the guns. (Trial Transcript, p. 29; Sellers' deposition, p. 10; Evans' deposition, pp. 12–13.) Roberts returned to the living room and aimed the .38 at Michael's head by holding the gun in front of him with his right hand and supporting his right wrist with his left hand.[2] (Trial Transcript, pp. 35–36, Sellers' deposition, p. 34.) He pulled the trigger, firing a bullet into the left side of Michael's head. (Trial Transcript, p. 29.)

David confronted Roberts after the shooting, but Roberts denied that he meant to shoot Michael. (Sellers' deposition, pp. 24–25.) Shortly thereafter, Roberts hid the guns in a bedroom. (Sellers' deposition, pp. 14, 26.) David and Jesse first ran next door to call for help and then told Michael's mother of the incident. When Michael's mother arrived at the trailer, Roberts stood in the doorway and denied responsibility for the shooting. (Sellers' deposition, pp. 36–40.)

Michael Griffin, Jr., through his parents, filed suit against the Dillards, contending that his injuries, totaling $72,403.10 to date, were caused by the negligence of the Dillards, who left their grandson unattended in a house with an accessible weapon.

## II. DISCUSSION

The mobilehome owner's policy excludes coverage for any bodily injury "which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." Policy, p. 19 (emphasis added). Allstate contends that Roberts' ac-

---

**2.** The testimony is somewhat conflicting as to whether Roberts aimed the gun squarely at Michael's head or between his head and a nearby table lamp. Accepting either testimony, Roberts aimed intentionally at or near Michael's head and the court finds that the reasonable result of such conduct is serious bodily injury.

tions are excluded from coverage because he intentionally pointed the gun at Griffin, and it was reasonable to expect that Griffin would be injured as a result. Moreover, Allstate argues that Roberts' actions were criminal, in violation of O.C.G.A. § 16–11–102, which would also exclude from coverage any reasonably expected injury.

Griffin contends that Roberts' actions were not intentional within the meaning of the applicable policy exclusion because Roberts did not subjectively intend to injure Griffin. Alternatively, Griffin contends that even if Roberts' actions were intentional, the negligence claim against the Dillards is not excluded from coverage.[3]

Griffin cites several Georgia cases to support his contention that Roberts' actions were not intentional. *See, e.g., Colonial Penn Ins. Co. v. Hart*, 162 Ga.App. 333, 291 S.E.2d 410 (1982); *Stein v. Massachusetts Bay Ins. Co.*, 172 Ga.App. 811, 324 S.E.2d 510 (1984). However, the insurance contracts in those cases excluded coverage for bodily injuries which are "expected or intended from the standpoint of the insured." *Colonial Penn*, 162 Ga.App. at 334, 291 S.E.2d 410. The Georgia Court of Appeals has construed this language to mean that the exclusion for intentional acts applies only when an insured intended both the act and the injury. Such contract language turns on the subjective intent of the insured. A subjective analysis was required in *Colonial Penn* because the exclusionary language explicitly referred to the standpoint of the insured; his expectations or intentions were "the only issue." *Id.* at 335, 291 S.E.2d 410.

In contrast, the exclusionary language in the instant case is broader and applies to bodily injuries which may "reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." Policy, p. 19 (emphasis added). Thus, even if LeShannon Roberts did not subjectively intend to harm Griffin, the injuries are exclud-

ed from coverage if they were the reasonably expected result of an intentional act. The language in the Allstate contract focuses on objective conduct and not merely on the expectations or intentions of the insured. Still, the excluded injuries must be those expected by a reasonable 13–year old.

At his deposition, Roberts testified that he pointed the gun at Michael Griffin and it went off. (Roberts' deposition, pp. 11, 21–22). Roberts was aware that a loaded gun would fire bullets, but maintains that he did not know whether the gun was loaded. (Roberts' deposition, p. 48.) While Roberts may not have intended to injure his friend, he nevertheless carefully aimed the gun and pulled the trigger.

David Sellers' testimony at his deposition and at trial are compelling and convince the court that Roberts acted with knowing intention when he aimed and fired the gun at Michael Griffin, Jr. The deposition testimony of Jesse Evans corroborates Sellers' testimony. Both Sellers and Evans testified that Roberts threatened to shoot them if they failed to follow his instructions. Both boys testified that Roberts went into the bedroom to load the guns. Thus, the court is convinced that Roberts knew that the gun was loaded and was aware of the effect of firing a loaded gun at a person.

In conclusion, the court finds that Roberts intentionally aimed the gun at Michael Griffin, Jr.'s head and fired it. Roberts' intention was shown by the careful aim he took when he fired the shot and through his statements directly preceding the shooting. The court has taken into consideration that Roberts was 13–years old at the time. Nevertheless, his statements to the other boys demonstrate his appreciation of the probable and certainly foreseeable results of pointing a loaded gun at a person's head. After listening carefully to the testimony at trial and reading the deposition testimony, the court finds that Roberts intentionally aimed the gun at Michael's head and pulled the trigger.

3. "The use of 'an insured' in the exclusion language as opposed to 'the insured' results in denial of coverage for a negligent insured if another insured committed an intentional act." *Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1448

(S.D.Fla.1989) (interpreting similar Allstate policy exclusion). Hence, if the court finds the injuries to be the result of an intentional act, the negligence claim is likewise excluded.

Further, the court finds that serious injury was reasonably expected to result from intentionally aiming and firing a .38 revolver at or near a person's head.[4] A bullet wound is a foreseeable and expected result of pointing a loaded gun at another and pulling the trigger. A reasonable 13-year old year should have anticipated this result.

The court further finds that LeShannon Roberts' actions were criminal in violation of O.C.G.A. § 16–11–102. Section 16–11–102 proscribes intentionally pointing or aiming a gun at another without legal justification, whether the gun is loaded or unloaded. O.C.G.A. § 16–11–102 (1992). The court finds that Roberts intentionally aimed the gun at Michael Griffin, Jr. without any legal justification. The intent necessary for the crime is the intent to point the gun at another person and such intent can be inferred from surrounding circumstances. *See Livingston v. State*, 6 Ga.App. 805, 65 S.E. 812 (1909); *Hawkins v. State*, 8 Ga.App. 705, 70 S.E. 53 (1911). The evidence overwhelmingly supports the court's finding that Roberts violated § 16–11–102. Furthermore, serious bodily injury is reasonably expected to result from this criminal conduct. Hence, the injuries to Michael Griffin, Jr. are excluded from coverage under both the intentional acts exclusion and the criminal acts exclusion. Having made the above two findings, the court does not need to consider whether Roberts subjectively intended to injure his friend.[5]

4. Serious bodily injury is the expected result whether the court employs the reasonable person standard or the more lenient reasonable 13-year old standard.

5. While Roberts' subjective intent to injure his friend would operate to deny insurance coverage, such a finding is not necessary under the exclusion provision.

6. Plaintiff Allstate, which bore the burden of proof, rested its case on the depositions of David Sellers and Jesse Evans. The court declined to allow plaintiff to read the depositions into the record at the nonjury trial, but assured the parties that the court would read any depositions submitted at trial. Defendants first objected to presenting David Sellers' testimony through deposition since he was present as a live witness. The pretrial order, however, allowed the deposition testimony of these two witnesses at trial subject to objection prior to trial. No objection was raised at the pretrial conference or other-

In sum, the court finds that LeShannon Corey Roberts intentionally and criminally fired a gun at Michael Griffin, Jr. causing reasonably expected injury. The act and resultant injury are not covered under the Allstate mobilehome owner's policy.[6]

Accordingly, the court directs the Clerk of Court to enter judgment in favor of plaintiff Allstate.

**SO ORDERED.**

wise prior to trial. Moreover, any error is harmless because David Sellers testified under direct and cross-examination at trial.

Defendants next sought to rest their case without presenting any evidence, or alternatively by submitting only deposition testimony. The court refused this request because it had previously read the deposition testimony when considering the motion for summary judgment. In the court's opinion, plaintiff carried its burden of proof through the depositions and defendants' deposition evidence was insufficient to impeach plaintiff's evidence. To allow defendants to rest their case on deposition testimony which the court had already found to be insufficient would deprive defendants of a fair hearing. Without question, the deposition testimony of David Sellers and Jesse Evans establish that Roberts acted intentionally when he aimed and fired the gun injuring Michael Griffin.