United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-1330

Allstate Insurance Company,      *
                                  *

        Appellee,          *
                                  *

    v.                   *
                                  * Appeal from the United
States
Mark Burrough,              * District Court for the
                                  * Western District of
Arkansas.
        Defendant,         *
                                  *
Garnette Bell, individually and as next       *
friend of Kenyatta Williams,   *
                                  *

        Appellant.         *

_____

Submitted:  September 13, 1996
                     Filed:  July 23, 1997

_____

Before McMILLIAN, MAGILL,[1] and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

MAGILL, Circuit Judge.

In response to an Arkansas state court action brought
by Garnette Bell on behalf of herself and her son,
Kenyatta Williams, Allstate Insurance Company (Allstate)

_____

[1]The Honorable Frank J. Magill was an active judge at the time this case was
submitted and assumed senior status on April 1, 1997, before the opinion was filed.

brought this declaratory judgment action against its insured, Joel Mark Burrough, and against Bell in order to ascertain Allstate's obligation to provide coverage to Burrough. Burrough was named as one of the defendants in Bell's state court action for tort damages because of Burrough's involvement in the accidental shooting of Williams. The district court[2] granted summary judgment in favor of Allstate, ruling that a criminal acts exclusion in the policy underwritten by Allstate excluded coverage. Allstate Ins. Co. v. Burrough, 914 F. Supp. 308, 310, 314 (W.D. Ark. 1996). Bell appeals, and we affirm.

**I.**

The material facts of this case are undisputed. The district court recounted the events leading up to the accidental shooting of Williams as follows:

> The record shows that in August or September of 1993, defendant [Burrough], who was approximately 14 at the time, stole a .22 caliber handgun from his grandfather's residence and took it home. Over the next couple of months he showed it to his friends, including Jeremiah Hauser and Christopher Beck. Sometimes they would shoot the gun into the ground in a storage shed on defendant's property. On one occasion, while the gun was being handled by a friend of defendant's named Chad Coleman, the gun misfired even though Chad had not touched the trigger or cocked the hammer. Still, defendant and his friends thought the gun was "cool."

---

[2]The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

In addition to playing with guns, defendant and his friends would pass the time by "cruising Grand [Avenue]." Grand is a long, wide street in Fort Smith, Arkansas, populated with numerous fast food restaurants and like business establishments. Many teenagers would cruise up and down the street for hours. Also, teenagers would hang out in the parking lots of the business establishments along Grand and drink beer, smoke

pot, and not infrequently, get into fights. Apparently, there was even some gang-like activity on Grand, or at least defendant and his friends thought that the "Bloods" hung out there wearing red bandannas and gang-like athletic wear. Also, teenagers who defendant and his friends believed to be involved with gangs had harassed them on one or two occasions prior to the night of the shooting.

Id. at 313.

The shooting occurred on October 22, 1993. On that day, Williams was on foot in the parking lot of a Harvest Foods grocery store in Fort Smith, Arkansas. In that same parking lot, Beck and Hauser were in a car driven by Beck. On the floorboard of Beck's car was the .22 caliber handgun that Burrough had stolen from his grandfather. As Beck and Hauser drove by Williams, Beck "flashed" the .22 caliber handgun towards Williams. The handgun accidentally discharged, shooting Williams in the neck. The bullet severed Williams's spinal cord and left him a quadriplegic.

Beck, who was sixteen years old at the time of the shooting, had received the .22 caliber handgun from Hauser. Hauser, who was fifteen or sixteen years old at the time of the shooting,[3] had obtained the handgun from Burrough approximately two weeks prior to the shooting.

---

[3]The district court found that Hauser "was approximately 16 at the time of the shooting," Allstate Ins. Co. v. Burrough, 914 F. Supp. 308, 310 (W.D. Ark. 1996), but according to Hauser's voluntary statement to the police given on October 23, 1993, he was fifteen years old at the time. See Jeremiah Hauser Voluntary Statement (Oct. 23, 1993) at 1, reprinted in Appellee's App. at 30.

Burrough was fourteen years old when he gave the gun to Hauser.

In a deposition, Burrough later testified that he gave the handgun to Hauser because Hauser was concerned that Burrough would be caught with the handgun in Burrough's possession.  <u>See</u> Joel Mark Burrough Dep. (Feb. 20, 1995) at 22, <u>reprinted</u>

*in* Appellee's App. at 19. Burrough also testified that he expected Hauser to return the handgun to him. Id. In addition, Burrough claimed that he could not remember any conversations with Hauser or Beck prior to the accidental shooting incident. See id. at 29-30, reprinted in Appellee's App. at 26-27. However, Burrough also testified that, prior to the shooting incident, Hauser and Beck told him that "they had gotten in a fight at school or something, or almost got in a fight, and they said something about something on Grand . . . ." Id. at 29, reprinted in Appellee's App. at 26. Finally, Burrough testified that, when he gave the gun to Hauser, it was loaded with several rounds of ammunition. See id. at 30, reprinted in Appellee's App. at 27.

Bell filed her Arkansas state court action on behalf of herself and Williams, naming Beck, Hauser, and Burrough as defendants. In her complaint, Bell alleged that Beck negligently and recklessly shot Williams, proximately causing damage to her and Williams. She further alleged that Hauser and Burrough acted negligently and recklessly in providing Beck with the .22 caliber handgun, which also proximately caused damage to her and Williams. Allstate subsequently filed this declaratory judgment action in the district court against Burrough and Bell. Allstate seeks a declaration that, under the terms of a homeowner's insurance policy purchased by Burrough's father, Allstate has no obligation to provide coverage for Burrough's acts and that Allstate consequently has no duty to defend Burrough in the state court action.

The parties agree that at all relevant times Burrough was covered by the Allstate homeowner's insurance policy purchased by Burrough's father. The policy obligates Allstate to pay, "[s]ubject to the terms, conditions and limitations of this policy, . . . damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies . . . ." Allstate Deluxe Plus Homeowners Policy, § II, Coverage X Family Liability Protection (Policy), reprinted in Appellee's App. at 6 (emphasis in original). The policy further provides that "[i]f an **insured person** is sued for these damages, **we**

[Allstate] will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent." Id. (emphasis in original).

In its declaratory judgment action, Allstate moved for summary judgment, asserting that, although Burrough was insured under the policy at the time of Williams's shooting, coverage was excluded by operation of the policy's criminal acts exclusion. The criminal acts exclusion provides that:

> **Losses We Do Not Cover Under Coverage X:**
> 1. **We** [Allstate] do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
> a) such **insured person** lacks the mental capacity to govern his or her conduct;
> b) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
> c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

Id., reprinted in Appellee's App. at 6-7 (emphasis in original).

The district court concluded that, although the state of Arkansas never pressed criminal charges or adjudged Burrough to be a juvenile delinquent, Burrough committed

a criminal act under Arkansas law.  <u>Burrough</u>, 914 F. Supp. at 311-12.  Specifically, the district court found that Burrough had committed the offense of furnishing a deadly weapon to a minor, in violation of Arkansas Code Annotated § 5-73-109.  <u>Burrough</u>, 914 F. Supp. at 311-12.

In addition, the district court concluded that "[Burrough] should have reasonably expected that someone might be killed or injured when [Burrough] committed the criminal act of providing a minor[, Hauser,]

with a firearm." Id. at 314. Accordingly, the district court held that Allstate is not obligated to provide coverage for Burrough's role in the accidental shooting incident. Id. The district court also held that Allstate has no duty to defend Burrough in the action brought by Bell. Id. Bell appeals.

## II.

On appeal, we review the district court's grant of summary judgment to Allstate de novo. See McCormack v. Citibank, N.A., 100 F.3d 532, 537 (8th Cir. 1996). Summary judgment is appropriate only if the record, viewed in the light most favorable to the nonmoving party, presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.; see also Fed. R. Civ. P. 56(c). A grant of summary judgment is proper "[w]here the unresolved issues are primarily legal rather than factual . . . ." Bank of America Nat'l Trust & Savings Ass'n v. Shirley, 96 F.3d 1108, 1111 (8th Cir. 1996).

A federal court's interpretation of an insurance policy in a diversity case is governed by state law, and accordingly, our interpretation of Allstate's insurance policy in this case is governed by Arkansas law. See Dupps v. Travelers Ins. Co., 80 F.3d 312, 313 (8th Cir. 1996). "We review the district court's interpretation of Arkansas law de novo." Id.

Under Arkansas law, "an insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in

favor of the insured and strictly against the insurer."
Noland v. Farmers Ins. Co., 892 S.W.2d 271, 272 (Ark.
1995).  However, the Arkansas Supreme Court has cautioned
that "[t]he terms of an insurance contract are not to be
rewritten under the rule of strict construction against
the company issuing it so as to bind the insurer to a
risk which is plainly excluded and for which it was not
paid."  Smith v. Shelter Mut. Ins. Co., 937 S.W.2d 180,
182 (Ark. 1997) (quotations and citations omitted).
Rather, we must

"adhere to the longstanding rule that, where the terms of the policy are clear and unambiguous, the policy language controls . . . ." Id. at 181.

Under Arkansas law, "absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms." Id. Although ambiguous language in an exclusionary clause "should be construed in favor of the insured," State Farm Fire & Cas. Co. v. Midgett, 892 S.W.2d 469, 471 (Ark. 1995) (quotations omitted), such "ambiguity exists . . . only when a provision is susceptible to more than one reasonable interpretation." Id. "The initial determination of whether a contract is ambiguous rests with the court, and when a contract is unambiguous, its construction is a question of law for the court." Hartford Fire Ins. Co. v. Carolina Cas. Ins. Co., 914 S.W.2d 324, 326 (Ark. Ct. App. 1996).

To prevail on its summary judgment motion in this declaratory judgment action, Allstate had the burden of proving as a matter of law that Burrough fell within the criminal acts exclusion. See Arkansas Farm Bureau Ins. Fed'n v. Ryman, 831 S.W.2d 133, 134-35 (Ark. 1992) (holding that an insurer has the burden of proving that an insured fell within an insurance policy exclusion). To fit within the terms of the criminal acts exclusion, Allstate needed to prove (1) that Burrough committed a "criminal act" and (2) that Burrough could have reasonably expected Williams's injury to have resulted

from that criminal act.[4]  Bell first presents two related arguments that challenge the first prong of this two-part analysis.

## A.

Bell argues that, although furnishing a gun to a minor is a criminal act under Arkansas law when committed by an adult, it is merely a delinquent act when

---

[4]Allstate has not argued that Williams's injuries were the intended or expected result of an intentional act committed by Burrough.

committed by a minor. According to Bell, it is therefore unclear whether Burrough, a minor when he gave the handgun to Hauser, committed a criminal act for purposes of Allstate's criminal acts exclusion. Bell thus argues that the criminal acts exclusion is ambiguous and should be construed against Allstate to find coverage for Burrough's act of furnishing a handgun to Hauser. We disagree.

Under § 5-73-109(a) of the Arkansas Criminal Code, Ark. Code Ann. §§ 5-1-101 to -76-106 (Michie 1993 & Supp. 1995), "[a] person commits the offense of furnishing a deadly weapon to a minor when he sells, barters, leases, gives, rents, or otherwise furnishes a firearm or other deadly weapon to a minor without the consent of a parent, guardian, or other person responsible for general supervision of his welfare." Ark. Code Ann. § 5-73-109(a) (Michie 1993). A minor is "any person under eighteen (18) years of age." Ark. Code Ann. § 5-73-101(2) (Michie 1993).

In the present action, it is undisputed that Burrough furnished a .22 caliber handgun to Hauser, who at the time was a minor. It is also undisputed that no responsible adult consented to the transfer. Consequently, Burrough's act of giving the handgun to Hauser satisfied all the elements of the criminal offense of furnishing a deadly weapon to a minor.

We recognize that Burrough, who was fourteen years old when he handed over the handgun to Hauser, could not be charged with or convicted of a § 5-73-109(a) offense in a criminal proceeding. Arkansas's juvenile courts

would have exclusive jurisdiction over Burrough with respect to a § 5-73-109(a) offense. Compare State v. Gray, 891 S.W.2d 376, 377 (Ark. 1995) (holding that the "jurisdiction of the juvenile court is exclusive and original with respect to all offenses charged against a juvenile who is fourteen years old at the time of the commission of those offenses, with the exception of certain offenses enumerated in Ark. Code. Ann. § 9-27-318(b)(1) (Repl. 1991)" (emphasis in original)) with Ark. Code Ann. § 9-27-318(b)(1) (Michie 1993) (granting prosecutorial discretion to charge fourteen-year-olds as adults with certain

enumerated offenses, not including § 5-73-109(a)). Therefore, for the act of furnishing a deadly weapon to Hauser, Burrough could only be adjudged a juvenile delinquent in a juvenile court. See Arkansas Juvenile Code of 1989, Ark. Code Ann. § 9-27-301 to -352 (Michie 1993) (setting forth provisions dealing with juvenile delinquency).

Although Burrough's status as a juvenile prevents him from being tried as an adult, the offense he committed is still a criminal act. Neither § 5-73-109(a) nor the provisions dealing with juvenile delinquency incorporate an age-based exception to the offense of furnishing a deadly weapon to a minor. Instead, § 5-73-109(a) applies to any "person" who furnishes a deadly weapon to a minor, see § 5-73-109(a), and the Arkansas Criminal Code recognizes that a minor, such as Burrough, is a "person." See § 5-73-101(2).

Regardless of whether he could be tried as an adult or be adjudged a juvenile delinquent, under the plain language of the Arkansas Criminal Code, Burrough committed an act defined as criminal. Hence, he committed a criminal act for purposes of Allstate's criminal acts exclusion. Cf. Butler v. State, 922 S.W.2d 685, 689 (Ark. 1996) (construing Ark. Code Ann. § 9-27-318(a) (Michie 1993) to hold that the state prosecutor had to file "theft charges" in juvenile court against a minor who was fifteen years old at the time that he committed offenses in violation of the Arkansas Criminal Code before the prosecutor could move to transfer the "charges" to circuit court); Eichelberger v. State, 916 S.W.2d 109, 110-12 (Ark. 1996) (In holding that

application of a newly-enacted, punitive law "increased the burden of the punishment" to juveniles and thereby violated the Ex Post Facto Clause because application of the newly-enacted law "makes more burdensome the punishment for a crime, after its commission," the court impliedly recognized that two minors, who had been adjudged delinquent, had committed a crime. (emphasis in original)); Johnson v. State, 888 S.W.2d 661, 661 (Ark. 1994) ("Appellant was adjudged a juvenile delinquent for committing the crimes of rape and robbery.").

Given Allstate's clear intention to exclude coverage for criminal acts, Bell cannot create an ambiguity merely by drawing a distinction based on the potential consequences that flow from Burrough's conduct. Nearly every reported federal court decision interpreting Allstate's criminal acts exclusion has also concluded that the criminal acts exclusion applies to minors. See Allstate Ins. Co. v. Green, 831 F.2d 145, 147 (6th Cir. 1987) ("Under this language it is clear that if young Robertson[, a fourteen-year-old boy,] had raped the girl himself, his act would have been an intentional or criminal act of an insured person and there would have been no coverage for either of the Robertsons.") (Michigan law); Allstate Ins. Co. v. Cutcher, 920 F. Supp. 796, 798-99 (N.D. Ohio 1996) (holding that, under Ohio law, criminal acts exclusion is applicable to a juvenile adjudged to be delinquent); Allstate Ins. Co. v. Dillard, 859 F. Supp. 1501, 1504 (M.D. Ga. 1994) (holding that, under Georgia law, criminal acts exclusion applies to acts of a minor), aff'd, 70 F.3d 1285 (11th Cir. 1995); Allstate Ins. Co. v. Carmer, 794 F. Supp. 871, 873 (S.D. Ind. 1991) (holding that criminal acts exclusion applies to acts committed by a fourteen-year-old boy because those acts constitute a violation of the Indiana Criminal Code); but see Allstate Ins. Co. v. Lewis, 732 F. Supp. 1112, 1114-15 (D. Colo. 1990) (holding that, under Colorado law, criminal acts exclusion does not apply to the acts of a minor).

Finally, it makes no difference whether Burrough was, or ever will be, adjudged a juvenile delinquent or criminally convicted. Under the terms of the criminal acts exclusion, coverage for bodily injury reasonably

expected to result from a criminal act is excluded "regardless of whether or not such insured person is actually charged with, or convicted of a crime." Policy, <u>reprinted in</u> Appellee's App. at 7 (emphasis omitted). Thus, as long as Williams's injury was the reasonably foreseeable result of Burrough's criminal act, coverage is excluded regardless of whether the state of Arkansas ever takes action against Burrough.

**B.**

Bell also argues that a reasonable insured, in purchasing a homeowner's insurance policy from Allstate, would not understand or realize that the criminal acts exclusion contained in that policy excluded coverage for the act of furnishing a handgun to a minor. Consequently, Bell argues that the criminal acts exclusion should be construed against Allstate. We disagree.

As a party to a contract governed by Arkansas law, a reasonable insured would understand that a criminal acts exclusion would exclude coverage for acts defined as criminal by the Arkansas Criminal Code. Under the Arkansas Criminal Code, moreover, a violation of § 5-73-109(a) is not such a minor offense that an insured could not reasonably understand that offense to be criminal. At the time Burrough gave the .22 caliber handgun to Hauser, a violation of § 5-73-109(a) was defined as a Class A misdemeanor, see Ark. Code Ann. § 5-73-109(b), punishable by up to one year in prison. Ark. Code Ann. § 5-4-401(b)(1) (Michie 1993).[5] Although Burrough, as a minor, would not have faced the same sentence if he had been adjudged a delinquent, the juvenile court could at its discretion have committed him to a youth services center, see Ark. Code Ann. § 9-27-330(3) (Michie 1993),

---

[5]Currently, furnishing a handgun to a minor is classified as a Class B felony, see Ark. Code Ann. § 5-73-109(b)(1) & (9) (Michie 1993 & Supp. 1995). A person criminally convicted of such an offense faces a sentence of imprisonment of "not less than five (5) years nor more than twenty (20) years." Ark. Code Ann. § 5-4-401(a)(3) (Michie 1993).

or placed him on probation.  <u>See</u> Ark. Code Ann. § 9-27-330(4) (Michie 1993).

Given the potential loss of liberty for furnishing a handgun to a minor, a reasonable insured would realize that such an act is a criminal act.  Any other interpretation of the criminal acts exclusion by this Court would rewrite the clear terms of Allstate's policy and force Allstate to bear a risk "which is plainly excluded and for

which it was not paid." Smith, 937 S.W.2d at 182 (quotations and citations omitted).

### III.

Bell argues that Allstate did not meet its burden of proving as a matter of law that Burrough could have reasonably expected Williams's injury to have resulted from his act of furnishing a handgun to Hauser. We disagree.

To determine whether Allstate met its burden, we must determine whether a reasonable person would find that Williams's injuries were the natural, probable, and foreseeable consequence of Burrough's actions. Cf. CNA Ins. Co. v. McGinnis, 666 S.W.2d 689, 690-91 (Ark. 1984) (applying an objective standard in construing "an [insurance policy] exception excluding coverage for personal injury which is 'expected or intended' by the insured" to mean "the policy exception excludes coverage for injuries which the average run of reasonable people would expect or intend to inflict by engaging in the conduct in question"); Mahan v. Hall, 897 S.W.2d 571, 573 (Ark. 1995) (applying objective definition of negligence); Bushong v. Garman Co., 843 S.W.2d 807, 812 (Ark. 1992) (applying objective definition of unreasonably dangerous); Allstate Ins. Co. v. Brown, 16 F.3d 222, 225 (7th Cir. 1994) (holding that, under Indiana law, an objective standard must be applied to interpret a criminal acts exclusion nearly identical to the criminal acts exclusion at issue in the present action and that "[t]he phrase ['reasonably expected'] is meant to ensure that the policy's exclusions apply only

to those injuries most likely to result from the insured's intentional or criminal conduct.").

The undisputed material facts demonstrate that a reasonable person would have expected Williams's injuries to result from the act of furnishing Hauser with a loaded .22 caliber handgun that had previously misfired. Based on past experience, Burrough knew that Hauser and Beck were likely to cruise up and down Grand avenue where teenagers hang out in the parking lots, drink beer, smoke marijuana, and get into fights.

Furthermore, Burrough knew that, on at least one previous occasion, Burrough and his friends had been harassed by teenagers believed to be involved in gangs.  Finally, Burrough knew that the gun had misfired on at least one previous occasion and that the gun was loaded when he handed it over to Hauser.

Given this knowledge, a reasonable insured would have expected that something would go awry after handing over a loaded, malfunctioning handgun to Hauser.  A reasonable insured would find Williams's injuries to be the natural, probable, and foreseeable consequence of furnishing Hauser with a loaded, malfunctioning handgun.  We reach this conclusion, notwithstanding the fact that Beck, rather than Hauser, was the one who accidentally fired the gun.  Regardless of which one of Burrough's friends held the gun when it misfired, once Burrough handed over a loaded, malfunctioning gun to Hauser, Burrough should have reasonably expected that an incident like the one that took place would happen.

## IV.

For the foregoing reasons, we affirm.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent.  Because I believe that the exclusion for "criminal acts" is ambiguous and must be construed in favor of Burrough as a matter of law and, alternatively, that a genuine issue of material fact exists as to Burrough's reasonable expectations, I would reverse.

To prevail in its declaratory judgment action, Allstate was required to prove that the policy's criminal acts exclusion applied to exclude Burrough from coverage by showing that: (1) Burrough committed a criminal act to which the criminal acts

exclusion applied[6] and (2) Burrough could have reasonably expected Williams's injury to result from the criminal act. See Arkansas Farm Bureau Ins. Fed'n v. Ryman, 831 S.W.2d 133, 134-35 (Ark. 1992) (an insurer has the burden of proving that an insured fell within an insurance policy exclusion). To prevail on summary judgment, Allstate was required to show that no genuine issue of material fact exists as to either of those requirements and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992). For the reasons set forth below, I would hold that the term "criminal acts" within the policy's criminal acts exclusion is ambiguous as applied to minors and, accordingly, should be construed against Allstate as a matter of law to provide coverage for Burrough. See Keller v. Safeco Ins. Co. of Am., 877 S.W.2d 90, 92 (Ark. 1994) (Keller) (court construes ambiguous insurance contract to justify recovery for insured). Alternatively, I would hold that a genuine issue of material fact exists as to whether Burrough could have reasonably expected Williams's injuries to result from his act of giving the handgun to Hauser.

I.  Ambiguity in the Policy's Criminal Acts Exclusion

---

[6]As noted in the majority's opinion, supra at 7 n.4, Allstate did not, at any point, claim that Burrough's conduct fell within the "intentional acts" clause of the exclusion.

The criminal acts exclusion is ambiguous because a particular act may be defined as criminal in one part of the Arkansas Code but not criminal in another part of the Arkansas Code by virtue of the alleged wrongdoer's age. Although furnishing a gun to a minor is a criminal act when committed by an adult, under the Arkansas Juvenile Code of 1989, Ark. Code Ann. §§ 9-27-301 to -368 (Michie Repl. 1993) (the juvenile code), it is a delinquent act when committed by a juvenile.

The juvenile code defines, in pertinent part, a juvenile as an individual who "[i]s under the age of eighteen (18) years." Ark. Code Ann. § 9-27-303(1)(A). A delinquent juvenile is defined as "any juvenile ten (10) years or older who has committed an act . . . which, if such act had been committed by an adult, would subject such adult to prosecution for a felony, misdemeanor, or violation under the applicable criminal laws of this state." Id. § 9-27-303(11). Generally, when such an act occurs, the prosecuting attorney files a delinquency petition in the juvenile division of the chancery court (hereinafter, juvenile court). Id. § 9-27-310. The juvenile court has exclusive and original jurisdiction of all offenses charged against a juvenile who is fourteen or fifteen years old at the time of the commission of those offenses, with the exception of certain offenses enumerated in § 9-27-318(b)(1). Id. § 9-27-318(a)(3); State v. Gray, 891 S.W.2d 376, 377 (Ark. 1995). For the limited offenses listed in § 9-27-318(b)(1), none of which is involved in this case, the prosecuting attorney may choose either to file a petition in juvenile court alleging delinquency or to file charges in circuit court and prosecute the individual as an adult. See id. § 9-27-318(a); see also Boyd v. State, 853 S.W.2d 263, 264 (Ark. 1993) (affirming transfer of juvenile proceeding to circuit court based upon § 9-27-318(c)). The Arkansas Supreme Court recently disapproved of the extent of discretion given prosecutors in prosecuting a juvenile as an adult and issued a caveat "that in juvenile transfer cases tried after this date, we will consider anew our interpretation of the juvenile code," Sanders v. State, 932 S.W.2d 315, 319 (Ark. 1996), indicating an intention that juveniles be protected under

the juvenile code.  Cf. McKeiver v. Pennsylvania, 403 U.S. 528, 545, 546 n.6 (1971) (the ideal of separate treatment for children through an intimate, informal protective juvenile proceeding "is still worth pursuing"); Valdez v. State, 801 S.W.2d 659, 661 (Ark. Ct. App. 1991) ("The revisions found in the Juvenile Code of 1989 were designed to promote and further safeguard the interests of accused juvenile offenders.").

Because furnishing a deadly weapon in violation of § 5-73-109 is not an offense which is excepted from the juvenile court's exclusive jurisdiction under § 9-27-18(b)(1), Burrough, who was fourteen years old at the time of his relevant acts,

was not subject to criminal charges for giving the handgun to Hauser.  In holding that "[t]he criminal acts exclusion applies so long as the insured engages in conduct which is described as criminal in the penal code, 'regardless of whether or not such insured person is actually charged with, or convicted of a crime,'" Allstate Ins. Co. v. Burrough, 914 F. Supp. 308, 312 (W.D. Ark. 1996) (Burrough) (quoting Policy, reprinted in App. for Appellee at 7) (emphasis omitted), the district court failed to recognize the distinction between an act for which an individual is actually charged or convicted and an act for which an individual can be actually charged or convicted.  Under Arkansas law, Burrough cannot be charged in circuit court or convicted criminally of furnishing a handgun to a minor.  Because Burrough committed an act which would be a criminal act if committed by an adult but for which he, as a fourteen-year-old, cannot be criminally charged or convicted under state law, the criminal acts exclusion in the policy may be reasonably interpreted as inapplicable to these circumstances.  The criminal acts exclusion is therefore ambiguous as applied to Burrough's act of giving a handgun to Hauser and must be construed to not exclude coverage for Burrough.  See Keller, 877 S.W.2d at 92.

The district court also reasoned that, because the policy does not cover mental incompetents for their criminal acts for which they cannot be prosecuted, it should be construed as excluding minors for their criminal acts for which they cannot be prosecuted. Burrough, 914 F. Supp. at 312.  However, under the district court's reasoning, the mental incompetents provision of the criminal acts exclusion is susceptible

-30-

to more than one meaning as to which individuals are included within the classification of mental incompetents. Specifically, an insured cannot determine whether the term "mental incompetents" includes only individuals adjudicated mentally incompetent, or whether it includes minors based on their legal incapacity. Therefore, the ambiguous mental incompetents provision must not be construed to include minors, see Keller, 877 S.W.2d at 92, and, thus, cannot be used to justify application of the criminal acts exclusion to minors.

In addition to the inherent ambiguity in the phrase "criminal acts" as applied to minors, I would also hold that the criminal acts exclusion is ambiguous insofar as it excludes coverage for "any bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts . . . of, any insured person . . . even if . . . such bodily injury . . . is of a different kind or degree than that . . . reasonably expected." Policy, reprinted in App. for Appellee at 6 (emphasis omitted). This provision creates a virtually limitless category of acts for which the insured will not be covered under the policy by excluding not only bodily injury which an insured may reasonably expect to result from his intentional or criminal act, but also, bodily injury of a different kind or degree than that which the insured reasonably expected. I doubt this interpretation represents the reasonable expectations of an insured who enters into this insurance contract. See Enterprise Tools, Inc. & E.B. v. Export-Import Bank, 799 F.2d 437, 442 (8th Cir. 1986), cert. denied, 480 U.S. 931 (1987). This provision is susceptible of more than one meaning as to when bodily injury may be reasonably expected to result from the intentional or criminal acts of an insured and, therefore, must be construed in favor of the possible interpretation that Burrough be denied coverage only for injuries resulting directly from his act of giving the gun to Hauser and not from Beck's subsequent acquisition of the gun and accidental shooting of Williams. See Keller, 877 S.W.2d at 92.

Finally, my construction of the policy in favor of coverage for Burrough does not unduly burden Allstate because, as the insurer and drafter of the policy, Allstate could have expressly included minors within the

criminal acts exclusion.  <u>See</u> <u>Foremost Ins. Co. v. Sheppard</u>, 610 F.2d 551, 557 (8th Cir. 1979) (interpreting Arkansas insurance law).  Allstate failed to do so, and I would not read such a meaning into the policy.

II.  <u>Burrough's Reasonable Expectations</u>

    Alternatively, I would reverse on the basis that Burrough could not have reasonably expected Williams's injury to result from his act because the relationship

between Burrough's giving the gun to Hauser and Beck's accidental shooting of Williams is too tenuous to qualify for exclusion.[7]  I believe the district court's disposition of this issue on summary judgment was erroneous because Burrough's deposition testimony, Exhibit C, reprinted in App. for Appellee at 12-27, creates a genuine issue of material fact as to whether Burrough could have reasonably expected Williams's injury to result from his act.  See Talley v. MFA Mut. Ins. Co., 620 S.W.2d 260, 262 (Ark. 1975) (where insurance policy excluded from coverage "bodily injury . . . which is either expected or intended from the standpoint of the insured," evidence that insured did not intend or expect resulting injury raised a question of fact and precluded summary judgment for insurer).  Furthermore, Burrough's reasonable expectations must be assessed in the eyes of a reasonable fourteen-year-old.  Allstate Ins. Co. v. Dillard, 859 F. Supp. 1501, 1503 (M.D. Ga. 1994) (while  contract's language excluding coverage for bodily injuries which may "reasonably be expected to result from the intentional or criminal acts of an insured person" focuses on objective conduct and not merely on the subjective expectations or intentions of the insured, "the excluded injuries must be those expected by a reasonable 13-year-old"), aff'd, 70 F.3d 1285 (11th Cir. 1995) (table).

Accordingly, I would reverse the district court's grant of summary judgment in favor of Allstate and remand the case to the district court with directions to enter judgment in favor of Bell.  Alternatively, I would remand the case to the district court for a trial on the issue of Burrough's reasonable expectations.

---

[7]I caution that the majority opinion's conclusion that "once Burrough handed over a loaded, malfunctioning gun to Hauser, Burrough should have expected that an incident like the one that took place would happen," supra at 13, may have a preclusive effect on the issue of causation in Bell's state court action.  Accordingly, I offer no opinion on the issue of causation, but only express my belief that a genuine issue of material fact exists as to Burrough's reasonable expectations.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.